**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re:<br>TOUSA, INC., *et al.*,<br><br>Debtors. | Chapter 11 Cases<br><br>Case No. 08-10928-JKO<br><br>Jointly Administered |
| OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS OF TOUSA, INC., *ET AL.*,<br><br>Plaintiff,<br><br>vs.<br><br>TECHNICAL OLYMPIC, S.A.;<br>KONSTANTINOS STENGOS; ANTONIO<br>MON; TOMMY MCADEN; ANDREAS<br>STENGOS; GEORGE STENGOS; LARRY<br>HORNER; WILLIAM HASLER; MICHAEL<br>POULOS; MARIANNA STENGOU; SUSAN<br>PARKS; J. BRYAN WHITWORTH; PAUL<br>BERKOWITZ; CANDACE CORRA;<br>RUSSELL DEVENDORF; BRIAN<br>KONDERIK; TOM MCANDREW; DAVE<br>SCHOENBORN; GORDON STEWART; and<br>STEPHEN WAGMAN,<br><br>Defendants. | Adv. Pro. No. 09-01616-JKO |

## FIRST AMENDED ADVERSARY PROCEEDING COMPLAINT

The Official Committee of Unsecured Creditors (the "Committee") of TOUSA, Inc.

("TOUSA") and its debtor affiliates (together with TOUSA, the "Debtors"), on behalf and as the

representative of the bankruptcy estates of the Conveying-Subsidiaries, by and through its

undersigned counsel, hereby alleges as follows for its complaint against the above-captioned

defendants (the "Defendants"), based upon information and belief and as a result of its

investigation to date:

## NATURE OF THE ACTION

1.      This action by the Committee seeks damages for breaches of fiduciary duties owed to the Conveying-Subsidiaries and their creditors, in connection with the July 31, 2007 transaction (the "Transaction" or "Transeastern Settlement"), whereby the Defendants caused the Conveying-Subsidiaries to incur over $500 million in new debt obligations that were secured by liens on all of the Conveying-Subsidiaries' assets.  The sole purpose of the Transaction was to enable TOUSA and TOUSA Homes LP ("Homes LP") to repay an old debt to the Transeastern Lenders (as defined below), for which the Conveying-Subsidiaries were never liable.  On October 13, 2009, the Transaction was held to be a fraudulent conveyance.[1]

2.      At its core, the Transaction swapped the unsecured debt of two of the Debtors with the secured debt of the 34 Conveying-Subsidiaries.  The Conveying-Subsidiaries, on whose behalf the Committee asserts the derivative claims herein, received little or nothing in exchange for this deal.

3.      The breaches of fiduciary duties, and the aiding and abetting thereof, occurred when the Conveying-Subsidiaries were insolvent.[2]  Thus, the Director Defendants (as defined below) owed fiduciary duties to all of the Conveying-Subsidiaries, and derivatively to their creditors.[3]

---

[1]  Case No. 08-10928-JKO, Adv. Pro. No. 08-01435 (JKO) [D.E. #658].

[2]  In the alternative, the breaches of fiduciary duty and the Transaction occurred when the Conveying-Subsidiaries were well within the zone of insolvency, which also triggers fiduciary duties being owed to a company's stakeholders, including its creditors.

[3]  Depending on the governing law, upon or nearing insolvency, fiduciary duties are owed exclusively to creditors, or are owed to the company and all stakeholders of the company, which include creditors.

4.      At the time of the Transaction, each of the Conveying-Subsidiaries was an obligor of the nearly $1.1 billion of bonds issued by TOUSA (the "Bonds"),[4] and had various other debt obligations.  Prior to the Transaction, with the exception of a relatively small amount of debt outstanding on TOUSA's revolving credit agreement, the holders of the Bonds (the "Bondholders") and other third-party creditors were senior in right to payment from the assets of all of the Conveying-Subsidiaries.  As a result of the Transaction, the Bondholders were in essence – and improperly – subordinated behind the new, secured lenders.

5.      Also as a result of the Transaction, the Conveying-Subsidiaries were saddled with a massive amount of secured debt for which they received little or no value in return, became financially hamstrung as the company and the market collapsed, and were unable to access necessary credit and liquidity or pursue other options.

6.      The Director Defendants breached their fiduciary duties by, among other things: acting solely in the interest of TOUSA and TOUSA's shareholders, even though the Conveying-Subsidiaries' insolvency required that they act in the best interest of the Conveying-Subsidiaries and their stakeholders, including creditors; and failing to investigate and inform themselves properly of the financial condition of each of the Conveying-Subsidiaries and the Transaction's effect on that company.[5]  The fiduciaries of each of the Conveying-Subsidiaries failed to obtain any advice whatsoever specific to individual Conveying-Subsidiaries, and failed to meet and

---

[4] The Bonds are comprised of:  (l) $300 million in 9% senior notes issued on June 25, 2002 and due in 2010; (2) $250 million in 8.25% senior notes issued on April 15, 2006 and due in 2011; (3) $l35 million in l0 3/8% senior subordinated notes issued June 25, 2002 and due in 2012; (4) $125 million in 75% senior subordinated notes issued March 17, 2004 and due in 2011; and (5) $200 million in 7.5% senior subordinated notes issued December 21, 2004 and due in 2015.

[5] Defendant McAden recused himself from the TOUSA board of directors' vote approving the Transaction due to a potential conflict of interest.  Thus, allegations concerning the Director Defendants' collective breaches of fiduciary duty in approving the Transaction exclude Defendant McAden.  However, the Committee's cause of action as to Defendant McAden is discussed in paragraphs 123, 125-126 and Count IV herein.

deliberate on behalf of the Conveying-Subsidiaries.  Instead, they abdicated their duties to the Conveying-Subsidiaries and their creditors by executing written consents prepared by TOUSA in lieu of meeting.

7.     Indeed, while the TOUSA Board (as defined below) received advice from Lehman Brothers ("Lehman") prior to entering the Transaction (the "Lehman Report"), TOUSA instructed Lehman to disregard the impact of the Transaction on the Conveying-Subsidiaries and their creditors.  Consequently, the Lehman Report only addressed whether the Transaction was in the best interests of TOUSA's stockholders.  The Director Defendants thereby acted in a grossly uninformed manner when approving the Transaction, and in violation of their duties of care, loyalty, and good faith.

8.     Certain of the Director Defendants (namely, Defendant Mon and the Stengos Defendants (as defined below)) further breached their fiduciary duties by, among other things, withholding information from TOUSA's advisors and other of the Director Defendants, and blocking efforts by TOUSA to arrange an equity investment in the company as a remedy to its financial problems in 2007, because they feared dilution of their ownership interests.

9.     In the alternative to liability for breaches of their duties of due care, loyalty, and good faith to the Conveying-Subsidiaries, the TOUSA Board Directors (as defined below) are liable for aiding and abetting the breaches committed by the Subsidiary Directors (as defined below).

10.     Defendant Technical Olympic, S.A. ("Tech SA") owned a majority of TOUSA's stock and controlled the TOUSA Board at the time the Transaction was approved and executed. Tech SA, through its agents, aided and abetted the Director Defendants' breaches of fiduciary duty by encouraging, inducing and assisting them in entering into the Transaction, by pressuring

4

the Director Defendants to act in the best interests of TOUSA's shareholders even though the

Conveying-Subsidiaries were insolvent, and by discouraging TOUSA from seeking new capital

to pay off its debt to the Transeastern Lenders.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157(a), 157(b) and 1334(b), and Local Rule 87.2.  This adversary proceeding relates to the

above-captioned chapter 11 cases pending before this Court.  Pursuant to 28 U.S.C. § 1409(a),

venue properly lies in this district, where the Debtors' chapter 1l cases are pending.

12.    This adversary proceeding is a "core" proceeding pursuant to 28 U.S.C.

§ 157(b)(2).  Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), in the event that any part of this adversary proceeding is found to be "non-

core," the Committee consents to entry of final orders and/or judgment by this Court.

## THE PARTIES

13.    The Debtors and their non-Debtor affiliates (collectively, the "TOUSA

Companies") design, build, and market detached single-family residences, town homes, and

condominiums, and operate in various metropolitan markets in ten states, located in four major

geographic regions:  Florida, the Mid-Atlantic, Texas, and the West.  TOUSA is a publicly

traded company and the TOUSA Companies were collectively the nation's thirteenth largest

homebuilder in 2006.  Beginning on January 29, 2008, each of the Debtors filed a voluntary

petition for relief under chapter 11 the Bankruptcy Code.

**Plaintiffs**

14.    Plaintiff Committee was appointed by the Office of the United States Trustee for

the Southern District of Florida pursuant to Bankruptcy Code section 1102 on February 13, 2008.

The Committee brings this action derivatively on behalf of and for the benefit of the estates of the following Conveying-Subsidiaries: Engle Homes Commercial Construction, LLC; Engle Homes Delaware, Inc.; Engle Homes Residential Construction, L.L.C.; Engle Sierra Verde P4, LLC; Engle/James LLC; LB/TE #1, LLC; Lorton South Condominium, LLC; McKay Landing LLC; Newmark Homes Business Trust; Newmark Homes Purchasing, L.P.; Newmark Homes, L.L.C.; Newmark Homes, L.P.; Preferred Builders Realty, Inc.; Reflection Key, LLC; Silverlake Interests, L.L.C.; TOI, LLC; TOUSA Associates Services Company; TOUSA Delaware, Inc.; TOUSA Funding, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes Colorado, LLC; TOUSA Homes Florida, L.P.; TOUSA Homes, Inc.; TOUSA Homes Investment #1, Inc.; TOUSA Homes Investment #2, Inc.; TOUSA Homes Investment #2, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; TOUSA Investment #2, Inc.; TOUSA, LLC; TOUSA Mid-Atlantic Investment, LLC; TOUSA Realty, Inc.; and TOUSA/West Holdings, Inc.

15.      Plaintiff Engle Homes Commercial Construction, LLC is a limited liability company organized under the laws of the state of Delaware. Its co-managers, at all relevant times, were TOUSA Homes, Inc. and Defendant Brian Konderik. The directors of TOUSA Homes, Inc., at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf. As of July 2007, Engle Homes Commercial Construction, LLC was indebted on the Bonds and had other debts. From and after June/July 2007 at the latest, Defendants Konderik, Berkowitz, Wagman, and Devendorf owed fiduciary duties to Engle Homes Commercial Construction, LLC and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

6

16.     Plaintiff Engle Homes Delaware, Inc. is a corporation formed under the laws of the state of Delaware.  Its directors, at all relevant times, were Defendants Dave Schoenborn, Russell Devendorf and Gordon Stewart.  As of July 2007, Engle Homes Delaware, Inc. was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Schoenborn, Devendorf, and Stewart owed fiduciary duties to Engle Homes Delaware, Inc. and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

17.     Plaintiff Engle Homes Residential Construction, LLC is a limited liability company organized under the laws of the state of Arizona.  Its co-managers, at all relevant times, were TOUSA Homes, Inc., Defendant Tom McAndrew, and Defendant Brian Konderick.  The directors of TOUSA Homes, Inc., at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf.  As of July 2007, Engle Homes Residential Construction, LLC was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants McAndrew, Konderick, Berkowitz, Wagman, and Devendorf owed fiduciary duties to Engle Homes Residential Construction, LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

18.     Plaintiff Engle Sierra Verde P4, LLC is a limited liability company organized under the laws of the state of Delaware.  Its sole member, at all relevant times, was TOUSA Homes, Inc.  The directors of TOUSA Homes, Inc., at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf.  As of July 2007, Engle Sierra Verde P4, LLC was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to Engle Sierra Verde P4,

7

LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

19.    Plaintiff Engle/James LLC is a limited liability company organized under the laws of the state of Colorado.  Its sole member, at all relevant times, was TOUSA Homes, Inc.  The directors of TOUSA Homes, Inc., at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf.  As of July 2007, Engle/James LLC was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to Engle/James LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

20.    Plaintiff LB/TE #1, LLC is a limited liability company organized under the laws of the state of Florida.  Its sole member, at all relevant times, was TOUSA Homes, Inc.  The directors of TOUSA Homes, Inc., at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf.  As of July 2007, LB/TE #l, LLC was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to LB/TE #1, LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

21.    Plaintiff Lorton South Condominium, LLC is a limited liability company organized under the laws of the state of Delaware.  Its sole member, at all relevant times, was TOUSA Homes, Inc.  The directors of TOUSA Homes, Inc., at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf.  As of July 2007, Lorton South Condominium, LLC was indebted on the Bonds and had other debts.  From and after

June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to Lorton South Condominium, LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

22.    Plaintiff McKay Landing LLC is a limited liability company organized under the laws of the state of Colorado.  Its sole manager, at all relevant times, was TOUSA Homes, Inc.  The directors of TOUSA Homes, Inc., at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf.  As of July 2007, McKay Landing LLC was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to McKay Landing LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

23.    Plaintiff Newmark Homes Business Trust is a trust organized under the laws of the state of Delaware.  Its co-managing trustees, at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf.  As of July 2007, Newmark Homes Business Trust was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to Newmark Homes Business Trust, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

24.     Plaintiff Newmark Homes Purchasing, L.P. is a limited partnership organized under the laws of the state of Texas.  The general partner, at all relevant times, was TOUSA Homes, Inc.  The directors of TOUSA Homes, Inc., at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf.  As of July 2007, Newmark Homes Purchasing, L.P. was indebted on the Bonds and had other debts.  From and after June/July 2007

9

at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to Newmark Homes Purchasing, L.P., and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

25.    Plaintiff Newmark Homes, L.L.C. is a limited liability company organized under the laws of the state of Delaware.  Its sole member, at all relevant times, was TOUSA Homes, Inc.  The directors of TOUSA Homes, Inc., at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf.  As of July 2007, Newmark Homes, L.L.C. was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to Newmark Homes, L.L.C., and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

26.    Plaintiff Newmark Homes, L.P. is a limited partnership organized under the laws of the state of Texas.  Its general partner, at all relevant times, was TOUSA Homes, Inc.  The directors of TOUSA Homes, Inc., at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf.  As of July 2007, Newmark Homes, L.P. was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to Newmark Homes, L.P., and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

27.    Plaintiff Preferred Builders Realty, Inc. is a corporation organized under the laws of the state of Florida.  The directors of Preferred Builders Realty, Inc., at all relevant times, were Defendants Paul Berkowitz, Steve Wagman, and Russell Devendorf.  As of July 2007, Preferred Builders Realty, Inc. was indebted on the Bonds and had other debts.  From and after

June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to Preferred Builders Realty, Inc., and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

28.    Plaintiff Reflection Key, LLC is a limited liability company organized under the laws of the state of Delaware. Its sole member, at all relevant times, was TOUSA Homes, Inc. The directors of TOUSA Homes, Inc., at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf. As of July 2007, Reflection Key, LLC was indebted on the Bonds and had other debts. From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to Reflection Key, LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

29.    Plaintiff Silverlake Interests, L.C. is a limited company organized under the laws of the state of Texas. The sole manager of Silverlake Interests, L.C., at all relevant times, was TOUSA Homes, Inc. The directors of TOUSA Homes, Inc., at all relevant times, were Defendants Paul Berkowitz, Stephen Wagman, and Russell Devendorf. As of July 2007, Silverlake Interests, L.C. was indebted on the Bonds and had other debts. From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to Silverlake Interests, L.C., and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

30.    Plaintiff TOI, LLC is a limited liability company organized under the laws of the state of Delaware. Its sole member, at all relevant times, was TOUSA, Inc. The directors of TOUSA, Inc., at all relevant times, were Defendants Konstantinos Stengos, George Stengos, Antonio Mon, Andreas Stengos, Marianna Stengou, Larry Horner, William Hasler, Tommy

McAden, Michael Poulos, Susan Parks, and J. Bryan Whitworth.  As of July 2007, TOI, LLC

was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest,

Defendants K. Stengos, G. Stengos, A. Stengos, Mon, Stengou, Horner, Hasler, McAden,

Poulos, Parks, and Whitworth owed fiduciary duties to TOI, LLC, and its creditors, either

exclusively or in conjunction with their duties to all relevant stakeholders, and breached those

duties as set forth herein.  Defendant Paul Berkowitz, Executive Vice President of TOUSA, Inc.,

breached his fiduciary duties by signing a Unanimous Written Consent in Lieu of a Meeting of

the Sole Member which authorized TOI, LLC to enter into the Transaction.

      31.     Plaintiff TOUSA Associates Services Company is a corporation organized under

the laws of the state of Delaware.  Its directors, at all relevant times, were Defendants Antonio

Mon, Paul Berkowitz, Steve Wagman, and Russell Devendorf.  As of July 2007, TOUSA

Associates Services Company was indebted on the Bonds and had other debts.  From and after

June/July 2007 at the latest, Defendants Mon, Berkowitz, Wagman, and Devendorf owed

fiduciary duties to TOUSA Associates Services Company, and its creditors, either exclusively or

in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth

herein.

      32.     Plaintiff TOUSA Delaware, Inc. is a corporation organized under the laws of the

state of Delaware.  Its directors, at all relevant times, were Defendants Gordon Stewart, Dave

Schoenborn, and Russell Devendorf.  As of July 2007, TOUSA Delaware, Inc. was indebted on

the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Stewart,

Schoenborn, and Devendorf owed fiduciary duties to TOUSA Delaware, Inc., and its creditors,

either exclusively or in conjunction with their duties to all relevant stakeholders, and breached

those duties as set forth herein.

33.    Plaintiff TOUSA Funding, LLC is a limited liability company organized under the laws of the state of Nevada.  Its managers and officers, at all relevant times, were Defendants Dave Schoenborn, Russell Devendorf, and Candace Corra.  As of July 2007, TOUSA Funding, LLC was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Schoenborn, Devendorf and Corra owed fiduciary duties to TOUSA Funding, LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

34.    Plaintiff TOUSA Homes Arizona, LLC is a limited liability company organized under the laws of the state of Delaware.  Its sole member, at all relevant times, was TOUSA, Inc.  The directors of TOUSA, Inc., at all relevant times, were Defendants Konstantinos Stengos, George Stengos, Antonio Mon, Andreas Stengos, Marianna Stengou, Larry Horner, William Hasler, Tommy McAden, Michael Poulos, Susan Parks, and J. Bryan Whitworth.  As of July 2007, TOUSA Homes Arizona, LLC was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants K. Stengos, G. Stengos, A. Stengos, Mon, Stengou, Horner, Hasler, McAden, Poulos, Parks, and Whitworth owed fiduciary duties to TOUSA Homes Arizona, LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.  Defendant Paul Berkowitz, Executive Vice President of TOUSA, Inc., breached his fiduciary duties by signing a Unanimous Written Consent in Lieu of a Meeting of the Sole Member, which authorized TOUSA Homes Arizona, LLC to enter into the Transaction.

35.    Plaintiff TOUSA Homes Colorado, LLC is a limited liability company organized under the laws of the state of Delaware.  Its sole member, at all relevant times, was TOUSA, Inc.  The directors of TOUSA, Inc., at all relevant times, were Defendants Konstantinos Stengos,

George Stengos, Antonio Mon, Andreas Stengos, Marianna Stengou, Larry Horner, William

Hasler, Tommy McAden, Michael Poulos, Susan Parks, and J. Bryan Whitworth.  As of July

2007, TOUSA Homes Colorado, LLC was indebted on the Bonds and had other debts.  From and

after June/July 2007 at the latest, Defendants K. Stengos, G. Stengos, A. Stengos, Mon, Stengou,

Homer, Hasler, McAden, Poulos, Parks, and Whitworth owed fiduciary duties to TOUSA Homes

Colorado, LLC, and its creditors, either exclusively or in conjunction with their duties to all

relevant stakeholders, and breached those duties as set forth herein.  Defendant Paul Berkowitz,

Executive Vice President of TOUSA, Inc., breached his fiduciary duties by signing a Unanimous

Written Consent in Lieu of a Meeting of the Sole Member, which authorized TOUSA Homes

Colorado, LLC to enter into the Transaction.

36.    Plaintiff TOUSA Homes Florida, L.P. is a limited partnership organized under the

laws of the state of Delaware.  Its General Partner, at all relevant times, was TOUSA Realty, Inc.

The directors of TOUSA Realty, Inc., at all relevant times, were Defendants Paul Berkowitz,

Steve Wagman, and Russell Devendorf.  As of July 2007, TOUSA Homes Florida, L.P. was

indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest,

Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to TOUSA Homes

Florida, L.P., and its creditors, either exclusively or in conjunction with their duties to all

relevant stakeholders, and breached those duties as set forth herein.

37.    Plaintiff TOUSA Homes, Inc. is a corporation organized under the laws of the

state of Florida.  Its directors, at all relevant times, were Defendants Paul Berkowitz, Stephen

Wagman, and Russell Devendorf.  As of July 2007, TOUSA Homes, Inc. was indebted on the

Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Berkowitz,

Wagman, and Devendorf owed fiduciary duties to TOUSA Homes, Inc., and its creditors, either

exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

38.    Plaintiff TOUSA Homes Investment #1, Inc. is a corporation organized under the laws of the state of Delaware.  Its directors, at all relevant times, were Defendants Paul Berkowitz, Steve Wagman, and Russell Devendorf.  As of July 2007, TOUSA Homes Investment #1, Inc. was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to TOUSA Homes Investment #1, Inc., and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

39.    Plaintiff TOUSA Homes Investment #2, Inc. is a corporation organized under the laws of the state of Delaware.  Its directors, at all relevant times, were Defendants Paul Berkowitz, Steve Wagman, and Russell Devendorf.  As of July 2007, TOUSA Homes Investment #2, Inc. was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to TOUSA Homes Investment #2, Inc., and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

40.    Plaintiff TOUSA Homes Investment #2, LLC is a limited liability company organized under the laws of the state of Delaware.  Its sole member, at all relevant times, was TOUSA Homes, L.P.  The General Partner of TOUSA Homes, L.P., at all relevant times, was TOUSA, LLC.  The sole member of TOUSA, LLC, at all relevant times, was TOUSA, Inc.  The directors of TOUSA, Inc., at all relevant times, were Defendants Konstantinos Stengos, George Stengos, Antonio Mon, Andreas Stengos, Marianna Stengou, Larry Horner, William Hasler, Tommy McAden, Michael Poulos, Susan Parks, and J. Bryan Whitworth.  As of July 2007,

TOUSA Homes Investment #2, LLC was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants K. Stengos, G. Stengos, A. Stengos, Mon, Stengou, Horner, Hasler, McAden, Poulos, Parks, and Whitworth owed fiduciary duties to TOUSA Homes Investment #2, LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.  Defendant Paul Berkowitz, Executive Vice President of TOUSA, Inc., breached his fiduciary duties by signing a Unanimous Written Consent in Lieu of a Meeting of the Sole Member, which authorized TOUSA Homes Investment #2, LLC to enter into the Transaction.

41.    Plaintiff TOUSA Homes Mid-Atlantic Holding, LLC is a limited liability company organized under the laws of the state of Delaware.  Its sole member, at all relevant times, was TOUSA, Inc.  The directors of TOUSA, Inc., at all relevant times, were Defendants Konstantinos Stengos, George Stengos, Antonio Mon, Andreas Stengos, Marianna Stengou, Larry Horner, William Hasler, Tommy McAden, Michael Poulos, Susan Parks, and J. Bryan Whitworth.  As of July 2007, TOUSA Homes Mid-Atlantic Holding, LLC was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants K. Stengos, G. Stengos, A. Stengos, Mon, Stengou, Horner, Hasler, McAden, Poulos, Parks, and Whitworth owed fiduciary duties to TOUSA Homes Mid-Atlantic Holding, LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.  Defendant Paul Berkowitz, Executive Vice President of TOUSA, Inc., breached his fiduciary duties by signing a Unanimous Written Consent in Lieu of a Meeting of the Sole Member, which authorized TOUSA Homes Mid-Atlantic Holding, LLC to enter into the Transaction.

16

42.    Plaintiff TOUSA Homes Mid-Atlantic, LLC is a limited liability company organized under the laws of the state of Delaware.  Its sole member, at all relevant times, was TOUSA, Inc.  The directors of TOUSA, Inc., at all relevant times, were Defendants Konstantinos Stengos, George Stengos, Antonio Mon, Andreas Stengos, Marianna Stengou, Larry Horner, William Hasler, Tommy McAden, Michael Poulos, Susan Parks, and J. Bryan Whitworth.  As of July 2007, TOUSA Homes Mid-Atlantic, LLC was indebted on the Bonds and had other debts. From and after June/July 2007 at the latest, Defendants K. Stengos, G. Stengos, A. Stengos, Mon, Stengou, Horner, Hasler, McAden, Poulos, Parks, and Whitworth owed fiduciary duties to TOUSA Homes Mid-Atlantic, LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.  Defendant Paul Berkowitz, Executive Vice President of TOUSA, Inc., breached his fiduciary duties by signing a Unanimous Written Consent in Lieu of a Meeting of the Sole Member, which authorized TOUSA Homes Mid-Atlantic, LLC to enter into the Transaction.

43.    Plaintiff TOUSA Homes Nevada, LLC is a limited liability company organized under the laws of the state of Delaware.  Its sole member, at all relevant times, was TOUSA, Inc. The directors of TOUSA, Inc., at all relevant times, were Defendants Konstantinos Stengos, George Stengos, Antonio Mon, Andreas Stengos, Marianna Stengou, Larry Horner, William Hasler, Tommy McAden, Michael Poulos, Susan Parks, and J. Bryan Whitworth.  As of July 2007, TOUSA Homes Nevada, LLC was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants K. Stengos, G. Stengos, A. Stengos, Mon, Stengou, Horner, Hasler, McAden, Poulos, Parks, and Whitworth owed fiduciary duties to TOUSA Homes Nevada, LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.  Defendant Paul

17

Berkowitz, Executive Vice President of TOUSA, Inc., breached his fiduciary duties by signing a Unanimous Written Consent in Lieu of a Meeting of the Sole Member, which authorized TOUSA Homes Nevada, LLC to enter into the Transaction.

44.    Plaintiff TOUSA Investment #2, Inc. is a corporation formed under the laws of the state of Delaware. Its directors, at all relevant times, were Defendants Paul Berkowitz, Steve Wagman, and Russell Devendorf. As of July 2007, TOUSA Investment #2, Inc. was indebted on the Bonds and had other debts. From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to TOUSA Investment #2, Inc., and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

45.    Upon information and belief, Plaintiff TOUSA Mid-Atlantic Investment, LLC is a limited liability company organized under the laws of the state of Delaware. Its sole member, at all relevant times, was TOUSA Homes, L.P. The General Partner of TOUSA Homes, L.P., at all relevant times, was TOUSA, LLC. The sole member of TOUSA, LLC, at all relevant times, was TOUSA, Inc. The directors of TOUSA, Inc., at all relevant times, were Defendants Konstantinos Stengos, George Stengos, Antonio Mon, Andreas Stengos, Marianna Stengou, Larry Horner, William Hasler, Tommy McAden, Michael Poulos, Susan Parks, and J. Bryan Whitworth. As of July 2007, TOUSA Mid-Atlantic Investment, LLC was indebted on the Bonds and had other debts. From and after June/July 2007 at the latest, Defendants K. Stengos, G. Stengos, A. Stengos, Mon, Stengou, Horner, Hasler, McAden, Poulos, Parks, and Whitworth owed fiduciary duties to TOUSA Mid-Atlantic Investment, LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein. Defendant Paul Berkowitz, Executive Vice President of TOUSA, Inc., breached his

fiduciary duties by signing a Unanimous Written Consent in Lieu of a Meeting of the Sole Member, which authorized TOUSA Mid-Atlantic Investment, LLC to enter into the Transaction.

46.    Plaintiff TOUSA Realty, Inc. is a corporation organized under the laws of the state of Delaware.  Its directors, at all relevant times, were Defendants Paul Berkowitz, Steve Wagman, and Russell Devendorf.  As of July 2007, TOUSA Realty, Inc. was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants Berkowitz, Wagman, and Devendorf owed fiduciary duties to TOUSA Realty, Inc., and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.

47.    Plaintiff TOUSA, LLC is a limited liability company organized under the laws of the state of Delaware.  Its sole member, at all relevant times, was TOUSA, Inc.  The directors of TOUSA, Inc., at all relevant times, were Defendants Konstantinos Stengos, Antonio Mon, Tommy McAden, Andreas Stengos, George Stengos, Marianna Stengou, Larry Horner, William Hasler, Michael Poulos, Susan Parks, and J. Bryan Whitworth.  As of July 2007, TOUSA, LLC was indebted on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants K. Stengos, G. Stengos, A. Stengos, Mon, Stengou, Horner, Hasler, McAden, Poulos, Parks, and Whitworth owed fiduciary duties to TOUSA, LLC, and its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders, and breached those duties as set forth herein.  Defendant Paul Berkowitz, Executive Vice President of TOUSA, Inc., breached his fiduciary duties by signing a Unanimous Written Consent in Lieu of a Meeting of the Sole Member, which authorized TOUSA, LLC to enter into the Transaction.

48.    Plaintiff TOUSA/West Holdings, Inc. is a corporation organized under the laws of the state of Delaware.  Its directors, at all relevant times, were Defendants Paul Berkowitz, Steve

Wagman, and Russell Devendorf.  As of July 2007, TOUSA/West Holdings, Inc. was indebted

on the Bonds and had other debts.  From and after June/July 2007 at the latest, Defendants

Berkowitz, Wagman, and Devendorf owed fiduciary duties to TOUSA/West Holdings, Inc., and

its creditors, either exclusively or in conjunction with their duties to all relevant stakeholders,

and breached those duties as set forth herein.

**Defendants**

49.    The "Director Defendants" are comprised of Konstantinos Stengos, Antonio Mon,

Tommy McAden, Andreas Stengos, George Stengos, Larry Horner, William Hasler, Michael

Poulos, Marianna Stengou, Susan Parks, J. Bryan Whitworth, Paul Berkowitz, Candace Corra,

Russell Devendorf, Brian Konderik, Tom McAndrew, Dave Schoenborn, Gordon Stewart, and

Stephen Wagman.  At the time of the relevant events, each Director Defendant had one or more

of the following positions:  (l) director, officer, manager or managing trustee of a Conveying-

Subsidiary; (2) director or manager of the corporate entities that, directly or indirectly, served as

a member, manager, trustee, partner and/or owner of a Conveying-Subsidiary; or (3) officer of

TOUSA who signed multiple resolutions on behalf of TOUSA, as the sole member, manager, or

general partner of certain Conveying-Subsidiaries, authorizing such Conveying-Subsidiaries to

enter into the Transaction.

50.    Defendant Konstantinos Stengos ("K. Stengos") was a member of the board of

directors of TOUSA, Inc.  As a result, he was a fiduciary of the following Conveying-

Subsidiaries, all of which had TOUSA, Inc. as their sole member: TOI, LLC; TOUSA Homes

Arizona, LLC; TOUSA Homes Colorado, LLC;  TOUSA Homes Mid-Atlantic Holding, LLC;

TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; and TOUSA LLC.  In

addition, K. Stengos was a fiduciary of TOUSA Homes Investment #2, LLC and TOUSA Mid-

Atlantic Investment, LLC because TOUSA Inc. was the sole member of TOUSA, LLC which was the general partner of Homes LP, which was the sole member of both TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC.

51. Defendant Antonio Mon was the President and Chief Executive Officer as well as a member of the board of directors of TOUSA, Inc. As a result, he was a fiduciary of the following Conveying-Subsidiaries, all of which had TOUSA, Inc. as their sole member: TOI, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes Colorado, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; and TOUSA LLC. In addition, Mon was a fiduciary of TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because TOUSA Inc. was the sole member of TOUSA, LLC which was the general partner of Homes LP, which was the sole member of both TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC. Mon was also a director and therefore a fiduciary of TOUSA Associates Services Company.

52. Defendant Tommy McAden was an Executive Vice President of TOUSA, Inc. as well as a member of the board of directors of TOUSA, Inc. As a result, he was a fiduciary of the following Conveying-Subsidiaries, all of which had TOUSA, Inc. as their sole member: TOI, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes Colorado, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; and TOUSA LLC. In addition, McAden was a fiduciary of TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because TOUSA Inc. was the sole member of TOUSA, LLC which was the general partner of Homes LP, which was the sole member of both TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC.

53.    Defendant Andreas Stengos ("A. Stengos") was a member of the board of directors of TOUSA, Inc.  As a result, he was a fiduciary of the following Conveying-Subsidiaries, all of which had TOUSA, Inc. as their sole member: TOI, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes Colorado, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; and TOUSA LLC.  In addition, A. Stengos was a fiduciary of TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because TOUSA Inc. was the sole member of TOUSA, LLC which was the general partner of Homes LP, which was the sole member of both TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC.

54.    Defendant George Stengos ("G. Stengos") was a member of the board of directors of TOUSA, Inc.  As a result, he was a fiduciary of the following Conveying-Subsidiaries, all of which had TOUSA, Inc. as their sole member: TOI, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes Colorado, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; and TOUSA LLC.  In addition, G. Stengos was a fiduciary of TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because TOUSA Inc. was the sole member of TOUSA, LLC which was the general partner of Homes LP, which was the sole member of both TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC.

55.    Defendant Larry Horner was a member of the board of directors of TOUSA, Inc. As a result, he was a fiduciary of the following Conveying-Subsidiaries, all of which had TOUSA, Inc. as their sole member: TOI, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes Colorado, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; and TOUSA LLC.  In addition, Horner was a fiduciary of

TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because

TOUSA Inc. was the sole member of TOUSA, LLC which was the general partner of Homes LP,

which was the sole member of both TOUSA Homes Investment #2, LLC and TOUSA Mid-

Atlantic Investment, LLC.

     56.     Defendant William Hasler was a member of the board of directors of TOUSA,

Inc.  As a result, he was a fiduciary of the following Conveying-Subsidiaries, all of which had

TOUSA, Inc. as their sole member: TOI, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes

Colorado, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic,

LLC; TOUSA Homes Nevada, LLC; and TOUSA LLC.  In addition, Hasler was a fiduciary of

TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because

TOUSA Inc. was the sole member of TOUSA, LLC which was the general partner of Homes LP,

which was the sole member of both TOUSA Homes Investment #2, LLC and TOUSA Mid-

Atlantic Investment, LLC.

     57.     Defendant Michael Poulos was a member of the board of directors of TOUSA,

Inc.  As a result, he was a fiduciary of the following Conveying-Subsidiaries, all of which had

TOUSA, Inc. as their sole member: TOI, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes

Colorado, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic,

LLC; TOUSA Homes Nevada, LLC; and TOUSA LLC.  In addition, Poulos was a fiduciary of

TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because

TOUSA Inc. was the sole member of TOUSA, LLC which was the general partner of Homes LP,

which was the sole member of both TOUSA Homes Investment #2, LLC and TOUSA Mid-

Atlantic Investment, LLC.

58.    Defendant Marianna Stengou was a member of the board of directors of TOUSA, Inc.  As a result, she was a fiduciary of the following Conveying-Subsidiaries, all of which had TOUSA, Inc. as their sole member: TOI, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes Colorado, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; and TOUSA LLC.  In addition, Stengou was a fiduciary of TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because TOUSA Inc. was the sole member of TOUSA, LLC which was the general partner of Homes LP, which was the sole member of both TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC.

59.    Defendant Susan Parks was a member of the board of directors of TOUSA, Inc. As a result, she was a fiduciary of the following Conveying-Subsidiaries, all of which had TOUSA, Inc. as their sole member: TOI, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes Colorado, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; and TOUSA LLC.  In addition, Parks was a fiduciary of TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because TOUSA Inc. was the sole member of TOUSA, LLC which was the general partner of Homes LP, which was the sole member of both TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC.

60.    Defendant J. Bryan Whitworth was a member of the board of directors of TOUSA, Inc.  As a result, he was a fiduciary of the following Conveying-Subsidiaries, all of which had TOUSA, Inc. as their sole member: TOI, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes Colorado, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; and TOUSA LLC.  In addition, Whitworth

was a fiduciary of TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because TOUSA Inc. was the sole member of TOUSA, LLC which was the general partner of Homes LP, which was the sole member of both TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC.

61.     Defendant Candace Corra was a Co-Manager of TOUSA Funding, LLC.  As a result, she was a fiduciary of TOUSA Funding, LLC.

62.     Defendant Brian Konderik was a Co-Manager of both Engle Homes Commercial Construction, LLC and Engle Homes Residential Construction, LLC.  As a result, he was a fiduciary of these Conveying-Subsidiaries.

63.     Defendant Tom McAndrew was Co-Manager of Engle Homes Residential Construction, LLC.  As a result, he was a fiduciary of this Conveying-Subsidiary.

64.     Defendant Dave Schoenborn was Director of Engle Homes Delaware, Inc.; TOUSA Delaware Inc. and TOUSA Funding, LLC.  As a result, he was a fiduciary of these Conveying-Subsidiaries.

65.     Defendant Gordon Stewart was a Director of both Engle Homes Delaware Inc. and TOUSA Delaware,  Inc.  As a result, he was a fiduciary of these Conveying-Subsidiaries.

66.     Defendant Paul Berkowitz was a director and executive vice president of, and as a result owed fiduciary duties to, the following Conveying-Subsidiaries:  TOUSA Associates Services Company; TOUSA Homes Investment, Inc. #1; TOUSA Homes Investment, Inc. #2; TOUSA Realty, Inc.; TOUSA/West Holdings, Inc.; TOUSA Investment #2, Inc.; TOUSA Homes, Inc.; and Preferred Builders Realty, Inc. In addition, Defendant Berkowitz was:

- an executive vice president of, and as a result owed fiduciary duties to, the following Conveying-Subsidiaries: Engle Homes Commercial Construction, LLC;

Engle Homes Delaware, Inc.; Engle Homes Residential Construction, LLC; Engle Sierra Verde P4, LLC; Engle/James LLC; LB/TE #1, LLC; Lorton South Condominium, LLC; Newmark Homes Purchasing, L.P; Newmark Homes, LLC; Newmark Homes, L.P.; Reflection Key, LLC; Silverlake Interests, L.C.; TOI, LLC; TOUSA Funding, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes Colorado, LLC; TOUSA Homes Florida, L.P.; TOUSA Homes Investment #2, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; and TOUSA, LLC;

- a co-managing trustee and officer of Newmark Homes Business Trust, and as a result owed fiduciary duties to that Conveying-Subsidiary;

- an executive vice president of TOUSA, Inc., and as a result owed fiduciary duties to the following Conveying-Subsidiaries that are managed by TOUSA, Inc. as their sole member: TOI, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes Colorado, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; and TOUSA LLC.  In addition, Paul Berkowitz was a fiduciary of TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because TOUSA Inc. was the sole member of TOUSA, LLC which was the general partner of Homes LP, which was the sole member of both TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC and;

- a director and executive vice president of TOUSA Homes, Inc., and as a result owed fiduciary duties to the following Conveying-Subsidiaries that are managed by TOUSA Home Inc. as their sole member, manager, co-manager, partner and/or

limited partner: Engle Homes Commercial Construction, LLC; Engle Homes

Residential Construction, LLC; Engle Sierra Verde P4, LLC; Engle/James LLC;

LB/TE #1, LLC; Lorton South Condominium, LLC; McKay Landing LLC;

Newmark Homes Purchasing, L.P.; Newmark Homes, LLC; Newmark Homes,

L.P.; Reflection Key, LLC; Silverlake Interests, L.C.; and TOUSA Homes Florida,

L.P.

67.     Defendant Stephen Wagman was a director and executive vice president of, and

as a result owed fiduciary duties to, the following Conveying-Subsidiaries: TOUSA Associates

Services Company; TOUSA Homes Investment, Inc. #1; TOUSA Homes Investment, Inc. #2;

TOUSA Realty, Inc.; TOUSA/West Holdings, Inc.; TOUSA Investment #2, Inc.; TOUSA

Homes, Inc.; and Preferred Builders Realty, Inc.  In addition, Defendant Wagman was:

- an executive vice president of, and as a result owed fiduciary duties to, the
  following Conveying-Subsidiaries: Engle Homes Commercial Construction, LLC;
  Engle Homes Residential Construction, LLC; Engle Sierra Verde P4, LLC;
  Engle/James LLC; LB/TE #1, LLC; Lorton South Condominium, LLC; Newmark
  Homes Purchasing, L.P; Newmark Homes, LLC; Reflection Key, LLC; Silverlake
  Interests, L.C.; TOI, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes
  Colorado, LLC; TOUSA Homes Florida, L.P.; TOUSA Homes Investment #2,
  LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic,
  LLC; TOUSA Homes Nevada, LLC; TOUSA Mid-Atlantic Investment, LLC and
  TOUSA, LLC;

- a co-managing trustee and officer of Newmark Homes Business Trust, and was the Secretary of Newmark Homes, L.P. and as a result owed fiduciary duties to those Conveying-Subsidiaries;

- a director and executive vice president of TOUSA Homes, Inc. and as a result owed fiduciary duties to the following Conveying-Subsidiaries that are managed by TOUSA Home Inc. as their sole member, manager, co-manager, partner and/or limited partner: Engle Homes Commercial Construction, LLC; Engle Homes Residential Construction, LLC; Engle Sierra Verde P4, LLC; Engle/James LLC; LB/TE #1, LLC; Lorton South Condominium, LLC; McKay Landing LLC; Newmark Homes Purchasing, L.P.; Newmark Homes, LLC; Newmark Homes, L.P.; Reflection Key, LLC; and Silverlake Interests, L.C. and

- an officer of TOUSA, LLC, and as a result owed fiduciary duties to TOUSA Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because TOUSA, LLC was the general partner of Homes LP, which was the sole member of both those Conveying-Subsidiaries.

68.    Defendant Russell Devendorf was a director and secretary of, and as a result owed fiduciary duties to, the following Conveying-Subsidiaries:  TOUSA Associates Services Company; TOUSA Homes Investment, Inc. #1; TOUSA Homes Investment, Inc. #2; TOUSA Realty, Inc.; TOUSA/West Holdings, Inc.; TOUSA Investment #2, Inc.; TOUSA Homes, Inc.; and Preferred Builders Realty, Inc.  In addition, Defendant Devendorf was:

- a director and executive vice president of Engle Homes Delaware, Inc. and was a manager and executive vice president of TOUSA Delaware, Inc. and as a result owed fiduciary duties to those Conveying-Subsidiaries;

- the secretary of, and as a result owed fiduciary duties to, the following
  Conveying-Subsidiaries: Engle Homes Commercial Construction, LLC; Engle
  Homes Residential Construction, LLC; Engle Sierra Verde P4, LLC; Engle/James
  LLC; LB/TE #1, LLC; Lorton South Condominium, LLC; Newmark Homes
  Purchasing, L.P; Newmark Homes, LLC; Newmark Homes, L.P.; Reflection Key,
  LLC; Silverlake Interests, L.C.; TOI, LLC; TOUSA Homes Arizona, LLC;
  TOUSA Homes Colorado, LLC; TOUSA Homes Florida, L.P.; TOUSA Homes
  Investment #2, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA
  Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; TOUSA Mid-Atlantic
  Investment, LLC and TOUSA, LLC;

- a Director of TOUSA Delaware Inc. and was co-managing trustee and officer of
  Newmark Homes Business Trust, and as a result owed fiduciary duties to those
  Conveying-Subsidiaries;

- a director and secretary of TOUSA Homes, Inc. and as a result owed fiduciary
  duties to the following Conveying-Subsidiaries that are managed by TOUSA
  Home Inc. as their sole member, manager, co-manager, partner and/or limited
  partner: Engle Homes Commercial Construction, LLC; Engle Homes Residential
  Construction, LLC; Engle Sierra Verde P4, LLC; Engle/James LLC; LB/TE #1,
  LLC; Lorton South Condominium, LLC; McKay Landing LLC; Newmark Homes
  Purchasing, L.P.; Newmark Homes, LLC; Newmark Homes, L.P.; Reflection Key,
  LLC; and Silverlake Interests, L.C. and;

- an officer of TOUSA, LLC, and as a result owed fiduciary duties to TOUSA
  Homes Investment #2, LLC and TOUSA Mid-Atlantic Investment, LLC because

TOUSA, LLC was the general partner of Homes LP, which was the sole member of both of those Conveying-Subsidiaries.

69.    Defendant Tech SA is a construction company based in Athens, Greece, that owned approximately 67% of TOUSA's stock at the time of the Transaction and was its controlling shareholder.  Tech SA's principal place of business is 20 Solomon Street, Alimos, Athens, Greece, 17456.  According to TOUSA's public filings Tech SA controlled the outcome of virtually all corporate transactions requiring stockholder approval, including the election of a majority of TOUSA's directors and other significant decisions, and can prevent or discourage certain other transactions.  Tech SA is subject to the jurisdiction of this Court because it (a) engaged in substantial, and not isolated, activity within the state of Florida; (b) committed a tortious act within the state, or caused injury to property within the state of Florida arising out of an act or omission outside the state of Florida; and (c) established sufficient minimum contacts in connection with its establishment, ownership, and control over TOUSA, such that subjecting Tech SA to personal jurisdiction in Florida would not offend traditional notions of due process.

70.    Collectively, Defendants K. Stengos, A. Stengos, G. Stengos and Stengou are referred to as the "Stengos Defendants".

71.    Collectively, Defendants K. Stengos, Mon, McAden, A. Stengos, G. Stengos, Horner, Hasler, Poulos, Stengou, Parks, and Whitworth constituted the board of directors of TOUSA, Inc. (the "<u>TOUSA Board</u>").  This group, except for McAden, is also referred to as the "TOUSA Board Directors".

72.    Collectively, Defendants Berkowitz, Wagman, Devendorf, Corra, Konderik, McAndrew, Schoenborn and Stewart are referred to as the "Subsidiary Directors".  The Subsidiary Directors together with the TOUSA Board Directors are the "Defendant Directors."

30

73.    All Defendants are properly joined in this action pursuant to Rule 20 of the

Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7020, because the right

to relief asserted against all Defendants arises out of the same transaction, occurrence, or series

of transactions and occurrences, and questions of law and fact common to all Defendants and/or

certain categories or classes of Defendants are implicated in this action.

## STATEMENT OF FACTS

### TOUSA's Joint Venture and the Transeastern Debt Funding

74.    On June 6, 2005, Debtor Homes LP and its joint-venture partner, Falcone/TEP

Holdings, LLC, f/k/a Falcone/Ritchie LLC, formed TE/TOUSA LLC (the "Transeastern JV" or

the "JV") to acquire substantially all of the homebuilding assets of Transeastern Properties, Inc.

(the "Transeastern Acquisition").  The Transeastern JV's operations focused primarily on the

Florida homebuilding market.

75.    The Transeastern JV was designed as a non-recourse joint venture, meaning that

its equity would be applied to TOUSA's value without exposing TOUSA or any of the

Conveying-Subsidiaries to the Transeastern JV's debt.  To fund the Transeastern Acquisition, the

Transeastern JV created a series of special purpose subsidiaries (the "TOUSA/TE Borrowers"),

which entered into three credit agreements, each dated August 1, 2005 (collectively, the

"Transeastern Credit Agreements"),[6] with a consortium of lenders (the "Transeastern Lenders")[7]

totaling $675 million (the "Transeastern Debt").

---

[6] Deutsche Bank Trust Company Americas ("DB Trust") was the original administrative agent under the Transeastern Credit Agreements, and Deutsche Bank Securities Inc. ("DB Securities") was the sole lead arranger and sole book running manager thereunder.  On March 13, 2007, The CIT Group/Business Credit, Inc. ("CIT") replaced DB Trust and DB Securities as administrative agent, lead arranger, and book running manager for the Transeastern Credit Agreements.

76.    TOUSA and Homes LP both executed three unsecured completion guaranties and three unsecured carve-out guaranties in respect of the Transeastern Credit Agreements (the "TOUSA/TE Guaranties"), making them obligors of the $675 million in Transeastern Debt.[8]

77.    At the time of the Transeastern Acquisition, TOUSA and the Conveying-Subsidiaries were already liable on approximately $1.1 billion in Bonds and had other liabilities. While TOUSA and Homes LP assumed these contingent obligations with respect to the Transeastern Debt, none of the other Conveying-Subsidiaries became obligors or guarantors under the Transeastern Credit Agreements.

## Beginning in 2006, the TOUSA Board Observed the Steep Downturn in the Housing Market and TOUSA's Dramatically Declining Business

78.    As early as February 14, 2006, TOUSA announced in a press release that it "anticipate[d] a more challenging housing market characterized by softening demand, decreased ability to raise home prices, lengthening regulatory processes and higher material costs."

79.    In May 2006, Defendant Mon informed the TOUSA Board that the housing industry was certainly in a downturn that would not be a short term event. Rather, it was something that could take years to work through. Defendant Mon noted that 2007 and 2008 could be significantly weaker than previously anticipated and that lower sales and lower margins were expected to continue for the foreseeable future. TOUSA also disclosed that its previously announced projections for deliveries by the Transeastern JV in 2006 should be decreased by approximately 20%.

---

[7] The Transeastern Credit Agreements consisted of the following: (l) a $450 million senior credit facility with a consortium of senior lenders (the "TE Senior Lenders"); (2') a $137.5 million senior mezzanine credit facility with a consortium of senior mezzanine lenders; and (3) an $87.5 million junior credit facility with a consortium of junior mezzanine lenders (the junior mezzanine lenders and senior mezzanine lenders are collectively referred to as the "TE Mezz Lenders").

[8] Upon information and belief, carve-out guaranties were also executed by Falcone/TEP Holdings, LLC and certain of its affiliates.

80.     By June 2006, Defendant Mon reported to the TOUSA Board that TOUSA's third quarter results would likely show a significant decrease from the prior year.  Indeed, in June TOUSA announced that its 2006 second-quarter sales would be down 25-40% compared to the same period in 2005.

81.     At the July 2006 TOUSA Board meeting, Defendant Mon conveyed concerns about TOUSA's performance in specific regions of the country.  He reported that the Phoenix area had experienced decreases in orders, traffic and gross margins and that he expected to see decreases in backlogs and increased cancellations in that market.  He also reported that the market in the Florida had "dramatically decreased," that other homebuilding companies had decided to "sell at any price," and that the market was now a "buyer's market."   The next month, TOUSA announced revised lower annual net income guidance for 2006, and indicated that it continued to expect difficult market conditions for the foreseeable future.

82.     By September 2006, the one-year-old Transeastern JV had essentially failed.  On September 27, 2006 in its Form 8-K filed with the Securities and Exchange Commission (the "SEC") TOUSA announced that the Transeastern JV's revised sales and delivery projections were not adequate to support the existing capital structure.  The Transeastern JV distributed financial projections to TOUSA indicating that it was unable to generate revenue adequate to service its debt, and it would not be able to continue as a going concern.  By September 30, 2006, TOUSA had written off the remaining equity investment in the Transeastern JV.

83.     At the time TOUSA undertook the Transeastern Acquisition in 2005, the book value of the Transeastern JV's assets was $862 million.  By November 30, 2006, the Transeastern JV's was worth a mere $475 million, versus $811 million in debt and other

liabilities it possessed.  Thus, the Transeastern JV, which principally owned Florida-based assets, was insolvent.

**Litigation Over the Failed Transeastern JV Commenced**

84.     On October 31, 2006, and November 1, 2006, TOUSA and Homes LP received demand letters from DB Trust requiring payment under the TOUSA/TE Guaranties.  The demand letters alleged that potential defaults and events of default had occurred under the Transeastern Credit Agreements, triggering obligations of TOUSA and Homes LP.  The letters purported to accelerate payment of the full $675 million owed in respect of the Transeastern Debt.  TOUSA's Form 8-K, filed November 7, 2006, acknowledged receipt of the demand letters and reported that DB Trust contended that TOUSA was liable under the TOUSA/TE Guaranties.

85.     In its Form 10-Q dated November 14, 2006, TOUSA declared publicly that the Transeastern JV's management had concluded that the JV would not have the ability to continue as a going concern under its current debt structure.  TOUSA also announced that it would write off $143.6 million of its investment in the JV.

86.     On November 29, 2006 and March 26, 2007, the Transeastern Lenders filed suits in New York against the TOUSA/TE Borrowers, TOUSA and Homes LP asserting alleged claims under the TOUSA/TE Guaranties and Transeastern Credit Agreements (the "Prepetition Transeastern Litigation").

87.     As the Conveying-Subsidiaries were not liable on any of the Transeastern Debt, they were not parties to the Prepetition Transeastern Litigation.

**As TOUSA Attempted to Deal With the Prepetition Transeastern Litigation in Early 2007, The Housing Market and TOUSA's Business Continued to Deteriorate**

88.     The severe problems plaguing the residential housing market accelerated in the first half of 2007.  Beginning in February 2007, numerous articles in the financial press reported

on the exploding subprime mortgage catastrophe and its effect on other types of mortgages and borrowers.  At the February 16, 2007 TOUSA Board meeting, Defendant Mon discussed the challenges of the housing industry across almost all of the markets in which the company was currently operating.  He also noted that the total supply of homes on the market was at a 40 year high as of the end of 2006 and when combined with a loss of affordability, resulted in his conclusion that the recovery was not likely to be rapid.

89.     Around the same time, the Executive Vice President for the Florida region of TOUSA Homes, Inc. sent an email to the head of TOUSA's Orlando division urging, "we must figure out a way to make sales. . . . I feel that we reached the point for radical solutions."  The head of the Orlando division responded that the southwest Florida market "has yet to hit bottom and from what I've seen so far this season we are nowhere near it. This market is going to take years to recover."

90.     It was apparent by early 2007 that the housing market was spiraling downward. In an internal TOUSA memorandum dated April 15, 2007 from Defendant Mon to Defendant Wagman, Defendant Berkowitz, and others, Defendant Mon observed that:

- "the macro housing environment continues to deteriorate";

- "the current housing correction is severe; one has to look [as] far back as 1989-1992 to find anything even remotely similar to what we are now experiencing";

- the housing correction's "duration and depth are unknown; and, frankly unknowable."

91.     The market also reflected TOUSA's worsening economic situation.  From its 2006 high of $23, TOUSA's stock price fell to below $4 in April 2007.  In May 2007, TOUSA's Bonds traded at discounts of 30% and 40% to face value.

92.     By this time, TOUSA had received a waterfall analysis from its financial advisor and two versions of a memorandum were drafted introducing Larry Young, an advisor to TOUSA from AlixPartners LLP ("Alix"), as the company's Chief Restructuring Officer. TOUSA was in the midst of negotiating a settlement with the Transeastern Lenders that would restructure or pay off the Transeastern JV.  On April 15, 2007, Young wrote in an email to Defendant Wagman, "[W]hy rush to restructure in a down market with a bad set of terms just to file in 3 months. If we need to file due to the lenders/shareholder issues, then lets do it now and save ourselves about $50 million in transaction cost!" Defendant Wagman agreed.

**Tech SA and the Stengos Defendants Blocked Efforts to Find New Equity to Solve TOUSA's Problems.**

93.     Taking on $500 million in new secured debt by leveraging the Conveying-Subsidiaries was by no means the only way out for TOUSA, and various of the company's executives and directors recognized that an equity infusion could be used to restructure the Transeastern Debt and see TOUSA through the economic crisis.

94.     On February 16, 2007, David Kaplan, one of the company's senior financial advisors, sent an email to Defendants Mon and Wagman noting the importance of preparing TOUSA's owners (Tech SA and the Stengos Defendants) for the likely need for an equity infusion of perhaps as much as $150 million.  Kaplan sent another email to them two days later stating that in order to "traverse the 2007 Valley of (Possible) Death" TOUSA would need to keep all of the cash it earned from home sales, reinvesting only in what would bring in more cash.

95.     Management's efforts to secure new funding were hampered by Tech SA and the Stengos Defendants, who opposed taking on new investments that would dilute their equity interest in TOUSA.   The Stengos Defendants, who, through Tech SA, owned about two-thirds

of TOUSA's issued and outstanding shares, expressed their disapproval of seeking out possible cash investment on numerous occasions.

96.    As early as February 2007, Defendant Mon noted in an email that discussion of dilution of their interests had "spooked" the Stengos Defendants.

97.    Other Director Defendants concurred that Tech SA and the Stengos Defendants hindered TOUSA's ability to secure new capital during this crucial period.  Defendant Wagman believed that the Stengos Defendants' opposition to diluting their equity interest prevented the company from maintaining necessary flexibility.  Defendant Berkowitz, TOUSA's Chief of Staff and its former outside counsel, believed that the controlling shareholders were focused on maintaining their equity position, and that the company was laboring under constraints because of Tech SA and the Stengos Defendants' desire to maintain control.

98.    Defendant Mon made clear to the Stengos Defendants that their resistance to equity dilution would force TOUSA to take on excessive debt.  In furtherance of this point, Defendant Mon prepared a power point presentation in April 2007 which he sent to a Stengos Defendants' financial advisor.  The presentation explained that the proposed Transaction would over-leverage TOUSA, that following the Transaction the company would have a 70/30 debt to equity ratio, and this would restrict access to capital markets, joint venture partners or land bankers, all of which were needed to grow the business and survive the downturn.  The presentation also noted that there were significant risks to TOUSA's ability to de-leverage, including further deterioration in the housing market, falling land and home values, and further weakening in credit markets.

99.    Ultimately, Defendant Mon was instructed by the Stengos Defendants and Tech

SA to terminate discussions with potential investors until the Prepetition Transeastern Litigation

ended and TOUSA had secured debt financing for the settlement with the Transeastern Lenders.

**The Director Defendants Caused TOUSA and the Conveying-Subsidiaries to Enter Into the Transaction**

100.    Consequently, the TOUSA Board Directors agreed to settle the Prepetition

Transeastern Litigation by entering into the Transaction, which involved, among other things, (1)

paying approximately $421 million to the TE Senior Lenders on July 31, 2007, fully satisfying

that tier of outstanding debt; and (2) providing a mixture of notes, stock and warrants to the TE

Mezz Lenders.

101.    In order to fund the Prepetition Transeastern Settlement, TOUSA and Homes LP

borrowed $500 million in term loans (the "New Debt") from a consortium of lenders (the "New

Lenders") led by Citicorp North America, Inc. ("Citicorp"), as Administrative Agent.[9]

102.    Although the Conveying-Subsidiaries were not obligated on the TOUSA/TE

Guaranties or the Transeastern Debt, and were not parties to the Prepetition Transeastern

Litigation, the Defendants wrongfully caused the Conveying-Subsidiaries to become borrowers

and guarantors under the New Debt.  Moreover, the obligations under the New Debt were

secured by first and second priority liens on all of the property and assets of all of the

Conveying-Subsidiaries.

103.    The Transeastern Settlement has been held to be a fraudulent conveyance, as the

Conveying-Subsidiaries did not receive reasonably equivalent value, were insolvent both before

---

[9] On or about January 28, 2008, Citicorp resigned as administrative agent under the Second Lien Term Loan and was replaced by Wells Fargo.

and after the Transaction, and were left with unreasonably small capital with which to operate their businesses as a result of the Transaction.

**The Process By Which the Transaction Was Approved And Executed Was Grossly Deficient and Constituted Breaches of Due Care, Loyalty, and Good Faith**

104.    TOUSA could not obtain the New Debt without providing as security the assets of the Conveying-Subsidiaries, and without the $500 million in New Debt, TOUSA could not finance the settlement payment to the Transeastern Lenders.  This required that each of the Conveying-Subsidiaries become a borrower and guarantor of the New Debt, provide as security liens on its assets, and approve and execute various documents in support of the New Debt.

105.    At the TOUSA Board meeting on June 20, 2007 at which the Transaction was approved, the TOUSA Board Defendants received a report and presentation on the economic situation facing the company and a recommendation on the Transeastern Settlement.  The presentation concluded that TOUSA was liquidating its assets at the bottom of the market, that the Transeastern Settlement was a "value destructive strategy" but that the company had "no other choice" but to approve it.  The TOUSA Board Directors were told that the company would be left with limited access to capital markets and that it was receiving financing on a "very short leash" with "little room for errors."

106.    Also at this meeting, Lehman advised the TOUSA board that the company "face[d] a substantial risk of an adverse judgment" in the Prepetition Transeastern Litigation and that an award of the full amount sought by the Transeastern Lenders would exceed TOUSA's total enterprise value.  Lehman advised the TOUSA Board Directors that in the event TOUSA filed for bankruptcy following an adverse judgment, TOUSA's shareholders would be entitled to no recovery.

107.    The Lehman Report went on to assert that entering into the Transaction was "the best alternative for TOUSA under the current circumstances to maximize the value of TOUSA for its stockholders."  However, Lehman explicitly stated that it had not been requested to consider, nor had it considered, whether the Transaction was the best alternative for TOUSA in order to maximize value for TOUSA's creditors.  The Lehman Report also did not address the issue of solvency, which was handled by a separate opinion provided by Alix.

108.    The TOUSA Board Directors approved the Transaction at the June 20th meeting and caused the Conveying-Subsidiaries to enter into the Transaction on July 31, 2007.

109.    The Conveying-Subsidiaries (through their Subsidiary Directors, or the director(s), manager(s) or officers of their managing entity) were directed to, and did, enter into unanimous written consents in lieu of meeting (the "Consents"), whereby the Conveying-Subsidiaries were authorized to take on the New Debt, and to pledge all of their assets in support thereof, even though the incurrence of such liability was against the interests of the Conveying-Subsidiaries and their creditors.

110.    None of the Director Defendants obtained advice or information concerning whether the individual Conveying-Subsidiaries were solvent prior to the Transaction or would receive adequate consideration in exchange for the New Debt obligations, nor did these considerations factor into the decision to approve the Transaction.  None of the Director Defendants evaluated the Transaction's effect on the interest of the Conveying-Subsidiaries' creditors.

111.    The TOUSA Board Directors approved the Transaction in order to maximize value for TOUSA's stockholders alone.  The TOUSA Board Directors, who separately owed fiduciary duties to certain of the Conveying-Subsidiaries and their creditors (by virtue of

TOUSA's position as certain of the Conveying-Subsidiaries' sole or managing member), did not

consider whether Conveying-Subsidiaries would benefit from the Transaction.  The TOUSA

Board Directors made no effort to identify, let alone quantify, the benefits, if any, to the

Conveying-Subsidiaries, and as such failed to make any business decision or judgment on behalf

of the Conveying-Subsidiaries to which they owed duties.

112.    None of the Subsidiary Directors conducted any analysis or evaluation

independent of the TOUSA Board Directors' determination that the Transaction was in the best

interests of TOUSA's stockholders.  The Subsidiary Directors went along with the Transaction

and executed the Consents without making any business decision or judgment on behalf of the

Conveying-Subsidiaries to which they owed fiduciary duties.

**TOUSA's Stakeholders and the Market Provided Ample Warning to the Director Defendants**

113.    Well before the TOUSA Board Directors approved the Transaction, and the

Subsidiary Directors blindly went along with them, certain Bondholders sounded the alarm

concerning the company's financial condition and its plan to take on the New Debt.  On April

18, 2007, counsel for Capital Research and Management Company ("Cap Re"), a major investor

in the bonds, sent the TOUSA Board a letter which was highly critical of the proposed

Transeastern Settlement.  Cap Re warned that the proposed Transeastern Settlement could put

TOUSA into the "zone of insolvency" and "may well be a fraudulent transfer by the Company

and/or one or more of the subsidiary guarantors."  Cap Re's letter also noted that the settlement

would "swap an unsecured liability of the parent corporation TOUSA for the secured liability of

TOUSA and its subsidiaries" which could "destroy the financial flexibility the Company will

require to survive if the housing slump becomes a protracted one."

114.    Instead of heeding Cap Re's warning, the Director Defendants did not change course or even seek the requisite information necessary to ascertain whether the Transaction would constitute a fraudulent conveyance upon the Conveying-Subsidiaries and their creditors. Rather, the TOUSA Board's response was to approve indemnity agreements for TOUSA officers "to the fullest extent permitted by law in the event that the officer is, or is threatened to be made, a party to or participant in any threatened, pending or completed action, suit or proceeding by reason of the fact that the officer is or was serving as one of the Company's officers."

115.    In May 2007, a widely circulated financial publication reported that some of TOUSA's Bondholders and Transeastern Lenders believed that the proposed Transaction could push the company into bankruptcy. Moreover, at least one analyst who closely followed TOUSA released a report several weeks before the Transaction closed that characterized TOUSA's proposed capital structure as "unsustainable."

116.    In July 2007, as a result of the proposed Transaction, Moody's and Standard & Poors both downgraded their ratings of TOUSA's Bonds and concluded that the company was "not likely" to be able to meet its financial obligations. In particular Moody's downgraded TOUSA's credit rating to reflect the "serious challenges that [TOUSA] will face with the increased debt leverage in a difficult industry environment," and noted that the proposed Transaction had a "very small margin of error" and that certain of TOUSA's Bonds were "likely in, or very near, default."

**Internal Communications Reflected Serious Misgivings About the Transaction**

117.    Months prior to the TOUSA Board vote approving the Transaction, Defendant Mon prepared a draft memo which noted the "likelihood that any Transeastern solution will make us overleveraged in the short term" and "[t]he potential that the current housing recession

lasts longer or becomes deeper than previously anticipated."  The draft memo proposed that, after the Transeastern settlement, TOUSA "re-balance its capital structure within the 45% to 55% debt to cap range as quickly as possible."  Defendant K. Stengos instructed Defendant Mon not to send the memo to the rest of the TOUSA Board.

118.    By May 2007, TOUSA executives acknowledged the company's inability to cover its debts.  One of Defendant Mon's outside advisors sent him an email which noted that the markets had declined dramatically and that margins, cash flows, earnings, asset values, were all very low and look to stay low for an unknown amount of time."  The advisor concluded that "we cannot afford to pay [the Transeastern Lenders] cash up front . . . Today, what is possible is not what looked possible a few months ago. And everyone knows this."

119.    Likewise, in a May 25, 2007 email to himself, Defendant Wagman wrote that TOUSA "will fail" to satisfy covenants in its bond indentures "into late 2008 or 2009.  Not even close."  In addition, Defendant Wagman noted that the market analysis of the home building sector was not good and that there was "a downward pressure on prices and margins are under a ton of pressure – including ours."  The email continued,  "[a]s CFO, and in light of all this market uncertainty, I have absolutely no desire to fly this plane too close to the ground, achieve some from [*sic*] of consensual settlement today and crash within the coming year.  That would be a clusterf***."

120.    Defendant Mon recognized that the proposed Transeastern Settlement would hamstring TOUSA in the midst of freefalling market conditions.  He prepared a memo entitled "Strategic Alternatives" (the "Strategic Alternatives Memo"), one version of which he sent to Defendant McAden on June 17, 2007 and another version of which he sent to an advisor to the Stengos Defendants on June 22, 2007.  The memo laid out the many drawbacks of the

Transaction including that it would leave TOUSA over-leveraged in the middle of a serious housing correction.  Mon stated in the Strategic Alternatives Memo that if it entered into the Settlement TOUSA would be

- "Forced to reduce assets at the wrong time;

- Unable to participate in the eventual upturn;

- Without access to the capital markets;

- With [a] deplet[ed] equity base from lack of profitability and the forced sale of assets at a loss;

- At significant risk of talent flight with poor prospects to replenish it;

- Reputationaly injured;

- In need of a significant equity infusion;

- Unable to survive should housing conditions degrade further or the housing correction lengthen appreciably; and

- In sum, seriously hurt."

121.    The Strategic Alternatives Memo also foresaw that a "[s]tay the [c]ourse" strategy – even when coupled with the company's de-leveraging plan – would, among other things, leave TOUSA unable to service its $1 billion of bond debt, at a "competitive disadvantage," with "[c]apital [c]onstraints" that would allow "[b]arely enough 'oxygen' to survive," with "[l]ittle room for error [and] increased risk of crashing and burning," "[l]imited ability to re-invest in the business," and "[a]lways on the brink of default." The "[e]nd [r]esult" of the strategy would be "[i]ncreased risk of failure and inability to withstand worsening business conditions."  A list of the pros and cons of the strategy identified only one "pro" – "[p]reserves the entity and the

existing, but diluted, ownership structure" – but seven "cons," the first of which was "[l]iquidation or bankruptcy risk."

122.    Defendant Mon arrived at these dire conclusions prior to the June 20th TOUSA Board vote approving the Transaction and weeks before the deal was consummated.  Defendant Mon emailed with Defendant McAden concerning the drafting of the Strategic Alternatives Memo, to which Defendant McAden contributed revisions prior to the document being sent to the Stengos Defendants.

123.    Despite the information in the Strategic Alternatives Memo, Defendant Mon never sent this analysis to other members of the TOUSA Board or to TOUSA's financial advisors, and instead advised the TOUSA Board that senior management believed that the deal should be approved.

124.    Defendant McAden, due to his position as the head of the Transeastern JV, recused himself from the TOUSA Board meetings at which the Transaction was evaluated and abstained from the board vote approving the Transeastern Settlement.  However, after receiving the draft Strategic Alternatives Memo, Defendant McAden did not understand why the company would take on the New Debt.  Not only was Defendant McAden privy to the analysis drafted by Defendant Mon and sent to the Stengos Defendants, but Defendant McAden commented on the content of the Strategic Alternatives Memo and himself sent a version of the document the Stengos Defendants' advisor, without including the TOUSA Board or any other of TOUSA's management on the email.  Upon information and belief, Defendant McAden was aware that Defendant Mon was sending information regarding the adviseability of the Transaction to the Stengos Defendants that was not also being conveyed to the full TOUSA Board.

125.    Despite that the dire conclusions in the Strategic Alternatives Memo caused him to question why the company would approve the Transaction, Defendant McAden remained silent about the numerous "red flags" concerning the Transeastern Settlement, did not alert other Director Defendants of the analysis contained in the Strategic Alternatives Memo, and did not otherwise object to the Transaction.

126.    In a presentation Defendant Mon made to Tech SA on August 4, 2007, which was prepared prior to the close of the Transaction, Defendant Mon stated that conditions were getting worse that price and land values were continuing their declines and that impairments would continue, and housing inventories were at a 40-year high.  At the time, TOUSA's own assessment was, that under the "best case" scenario, sales would not recover until mid to late 2008 and deliveries (the more important metric) would not recover until early to late 2009; in the "worst case" scenario, sales would not recover until mid to late 2009 and deliveries would not recover until in mid to late 2010.

127.    Mon's presentation to Tech SA included TOUSA's assessment that the "[w]orst [was] yet to come for Southeast and Southwest Florida. . . .  Many analysts anticipate Florida home prices to come down as much as 20%-40%. . . .  TOUSA is Very Exposed to Florida."

128.    Prior to the Transaction, TOUSA executives faced difficulty securing and retaining prospective lenders.  According to Defendant Wagman, "[b]ecause of…the market's perceptions of TOUSA's credit risks, the syndication market for the new loans became more challenging in July, and the costs of the loans to TOUSA increased."  In a July 24, 2007 email to Defendants Wagman, Devendorf and Berkowitz, one of the bankers working on the syndication urged TOUSA to resolve the remaining issues preventing the Settlement from occurring because "the [market] has completely dried up" and was "going from horrendous to worse."

**TOUSA was Insolvent Both Before and After the Transaction**

129.   The market reflected the fact that the Debtors were insolvent prior to the Transaction.  In July 2007, the Bonds (which had been repeatedly downgraded), were trading in some cases at a significant discount to par.  For example, some of the Bonds were trading as low as $0.45 on the dollar.  As of the date of the Transaction, the market valuation of TOUSA revealed a net equity of approximately negative $189 million.

130.   The fair value of the Conveying-Subsidiaries' liabilities exceeded the fair value of their assets.  For example, TOUSA Homes, Inc.'s liabilities exceeded the fair value of its assets by $122 million prior to the Transaction, and Newmark Homes L.P.'s liabilities exceeded the fair value of its assets by $58 million prior to the Transaction.

131.   After the Transaction, TOUSA's consolidated debt exceeded the market's valuation of its assets, the Conveying Subsidiaries had unreasonably small capital after the Transaction, and they were unable to pay their debts as they became due.

132.   By August 8, 2007, Defendant Wagman determined that the TOUSA financing model was wrong, putting the company at risk of covenant violations. By September, 2007 Defendant Wagman determined that he could not issue a solvency representation, as required by the credit agreement, and that TOUSA was already in violation of several covenants under the agreement.

133.   The insolvency of the Conveying-Subsidiaries before and after the Transaction resulted in the Director Defendants owing fiduciary duties to the Conveying-Subsidiaries and to their creditors.  The Director Defendants failed to investigate, inform themselves, and deliberate properly as to the effect of the Transaction on the Conveying-Subsidiaries and their creditors.

134.    One of the Director Defendants acknowledged that the amount of time spent at the June 20, 2007 TOUSA Board meeting discussing the Transaction's benefit to the Conveying-Subsidiaries was "[i]f not zero, close to zero."

**The Professional Advice Sought By the TOUSA Board Directors Failed To Address the Interests of the Conveying-Subsidiaries or Their Creditors**

a.    **The Lehman Advice**

135.    Before approving the Transeastern Settlement, the TOUSA Board Directors retained Lehman to advise TOUSA with respect to the proposed Transaction.  However, the TOUSA Board Directors only engaged Lehman to give an opinion as to whether the Transaction was the best alternative solely to maximize value for TOUSA's stockholders.

136.    In response to this mandate, Lehman reported to the TOUSA Board that "the Transaction provides the best alternative for TOUSA under the current circumstances to maximize the value of TOUSA for its stockholders."  Lehman clearly disclosed that it had not been asked to, nor had it, considered the impact of the Transaction on the Conveying-Subsidiaries.  Lehman also stated that it had neither been asked to consider, nor had it considered, whether the Transaction would be beneficial to the company's creditors.

137.    Notwithstanding the express disclaimers in the Lehman Report, none of the Director Defendants sought similar opinions on behalf of the Conveying-Subsidiaries or the Conveying-Subsidiaries' creditors.

138.    Had the TOUSA Board Directors requested it, Lehman could have included in its report relevant advice and information regarding the impact and desirability of the Transaction on the Conveying-Subsidiaries and their existing creditors.

139.    In addition to the fact that Director Defendants purposely sought an insufficient report from Lehman, the TOUSA Board also structured Lehman's incentives so as to favor the

approval of the Transaction.  Under Lehman's original fee arrangement, $3.5 million of

Lehman's compensation was contingent on completion of the Transeastern Settlement.  Later,

when it became clear that Lehman would not be participating in the financing of the New Debt,

the fee arrangement was modified to add a $2.9 million financing advisory fee, which was also

contingent on completion of the Transaction.

> **b.**    **The Alix Opinion**

140.    Following receipt of the Cap Re letter to TOUSA, Citi demanded that TOUSA

provide a solvency opinion as a condition of closing the Transaction.  TOUSA approached Alix

to request such an opinion.  The TOUSA Board Directors came to believe that if TOUSA could

obtain a solvency opinion, no matter how unsupportable, the TOUSA Board Directors would be

legally permitted to (a) disregard the interests of TOUSA and its creditors, (b) disregard the

interests of the Conveying-Subsidiaries and their creditors, (c) act strictly in the interest of

TOUSA's shareholders, even at the expense of causing great harm to the Conveying-

Subsidiaries' and their creditors, and (d) enter into the Transaction.

141.    Alix initially believed "such an opinion would be hard" for Alix to provide,

without "a lot of outs," and refused to take on the solvency opinion engagement.  TOUSA,

consequently, began to look for other candidates to provide the solvency opinion.

142.    Eventually, TOUSA was able to convince Alix to provide the opinion (the "Alix

Opinion") for a fee of two million dollars – a sum that was well above market rates for similar

engagements as evidenced by the fact that at least one competitor told Citi it could provide the

solvency opinion for one-quarter of that amount.  Indeed, Defendant Mon described the fee as

"egregious"; Defendant Wagman conceded it was "a very large fee"; and one of Alix's own

partners described the $2 million fee as a "premium based on the riskiness of the assignment."

This two million dollar fee for the solvency opinion was paid in addition to over three million dollars in fees that Alix collected from TOUSA for other services rendered in connection with the Transaction.  The price for the Alix Opinion amounted to a contingency fee arrangement that rendered the Alix Opinion suspect from the get go.

143.    Alix was retained on June 15, 2007, and by the June 20th TOUSA Board meeting Alix indicated that it expected to deliver a favorable opinion.  The Lehman Report presented at the meeting presumed TOUSA's solvency because of the Alix Opinion, which at that point had not been completed.  A week later, Alix's solvency opinion was already being circulated.

144.    In addition to the haste in which it was completed, the Alix Opinion was also unreliable for a number of reasons, including the fact that the methodologies it used for determining solvency were seriously flawed.

145.    The Alix Opinion failed to address the joint and several liability of each co-borrowing party to the New Debt or determine the solvency of the Conveying-Subsidiaries on an unconsolidated basis.  Neither Alix nor TOUSA ever considered whether any individual subsidiary was solvent or insolvent at the time of the Transaction or whether any individual subsidiary would be rendered insolvent by the Transaction.

146.    The Alix Opinion was based entirely on management's forecasts, and Alix explicitly noted in its findings that it did not independently verify any of the financial information it received from TOUSA.  The Alix Opinion stated "[w]e have assumed and relied upon, without independent verification, the accuracy and completeness of the information reviewed by us for the purposes of these opinions."  Alix relied on projections provided by TOUSA's management, not from a "bottoms up" analysis of TOUSA's business.

147.    Despite the fact that TOUSA's regional divisions collected community-by-community level data and produced forecasts on a monthly basis, no effort was made to obtain this information and provide it to Alix.  Rather, the five-year projections and forecasts given to Alix – which showed average sales prices going up by a significant amount –  came from TOUSA's management and not from the field operations.  Had TOUSA obtained this existing information from its own divisions, it would have seen that the forecasts provided to Alix contradicted the projections of its own business units.  TOUSA's regional and operational managers were not even aware that TOUSA's management was concocting such forecasts in preparation for the New Debt.

148.    In addition to the forecasts not including "bottoms up" analysis, TOUSA's management also failed to update these assumptions in light of TOUSA's rapidly collapsing business during the second quarter of 2007.  Alix relied heavily on a discounted cash flow analysis to conclude that TOUSA had a consolidated enterprise value that exceeded its debts.  Alix's "most likely" scenario relied on critical assumptions concerning sales price and deliveries that TOUSA generated in April 2007 – four months before the Alix Opinion was completed and the Transaction was approved.  Despite dramatic deterioration in the market and in TOUSA's business during those months, TOUSA did not alter its year-over-year growth assumptions upon which the solvency analysis was premised.  TOUSA management privately believed that these assumptions were outdated and overly optimistic.

149.    The projections given to Alix were proven to be egregiously wrong.  TOUSA told Alix to assume that for calendar year 2007, it would, among other things, deliver 7,472 homes, earn homebuilding revenues of $2.333 billion and earn EBITDA of $144 million.  In fact, TOUSA ended up delivering only 6,770 homes, received homebuilding revenues of $2.159

billion, and reported negative "earned" EBITDA.  Given that TOUSA already had more than six months of actual data for 2007, the magnitude of the "miss" for a period of only five months into the future establishes that the forecast provided to Alix was highly inflated.

150.    On July 31, 2007 Alix provided its opinion to the TOUSA Board, stating that TOUSA would be solvent on a consolidated basis immediately after giving effect to the Transaction.

151.    The projections given to Alix – and the Alix Opinion of solvency itself – were immediately and conclusively proven wrong.  Within only weeks of the Transaction, TOUSA could not provide the solvency certificate required to obtain funding under its existing revolving credit agreement.

152.    Neither the Alix Opinion nor the Lehman Report addressed the interests of the Conveying-Subsidiaries or their creditors.  No professional advice regarding the particular interests of the Conveying-Subsidiaries and their creditors was sought by any of the Director Defendants.

**<u>Certain of the Director Defendants Sought to Further Their Own Financial Interests in the Transaction</u>**

153.    At the time of the Transaction, Defendant Tech SA, TOUSA's majority shareholder, owned approximately 67% of TOUSA's outstanding common stock and, thus, had control over the election of all the TOUSA Board Directors.  As noted above, TOUSA's public filings disclosed the control that this ownership gave Tech SA over TOUSA's affairs.

154.    At the time of the Transaction and through October 2007, at least four of the TOUSA Board Directors were also on Tech SA's board of directors and had a financial interest in TOUSA's majority shareholder, rendering them fiduciaries of both companies and deeply conflicted with respect to the Transaction.  For example, Defendant K. Stengos, in addition to

being a TOUSA Board Director, is also founder of Tech SA and one of Tech SA's directors.

Defendant G. Stengos, in addition to being a TOUSA Board Director, is also the Executive Vice

President and General Manager of Tech SA.  Defendant G. Stengos, in addition to being a

TOUSA Board Director, is also President of a subsidiary of Tech SA.  Defendant M. Stengou, in

addition to being a TOUSA Board Director, is also the Director of Human Resources of Tech SA

and one of Tech SA's directors.

155.    Moreover, as stated above, at all relevant times, TOUSA served as general partner

or manager of at least nine Conveying-Subsidiaries.  As such, all TOUSA Board Directors owed

fiduciary duties to those Conveying-Subsidiaries, and their creditors, either exclusively or in

conjunction with their duties to all relevant stakeholders.

156.    All of the TOUSA Board Directors acted solely in the interest of Tech SA and

TOUSA's other shareholders when they approved the Transaction and Transeastern Settlement,

and failed to consider the interests of the Conveying-Subsidiaries and their creditors altogether.

Meanwhile, the Conveying-Subsidiaries did not receive any equivalent consideration in

exchange for the New Debt and Transeastern Settlement.

157.    Upon information and belief, Tech SA or its agents pressured the TOUSA Board

Defendants and other of the Director Defendants to enter into the Transaction and discouraged

the company from exploring the option of settling the Prepetition Transeastern Litigation with

funds from potential new equity partners, because Tech SA was concerned with the consequent

dilution of its ownership interest.

158.    Tech SA was privy to privileged information during the course of the negotiations

over the Transaction.  Thus, Tech SA was involved in the TOUSA Board's decision making and,

upon information and belief, the Director Defendants were pressured to and did act in the interest

of Tech SA and TOUSA's other shareholders in pushing the Transeastern Settlement through.
Tech SA knowingly participated in the Director Defendants' breaches, and, indeed were the
prime beneficiaries of them.

159.    All of the Defendants had material personal economic interests in acting solely in
the interest of TOUSA and disregarding their fiduciary duties to the Conveying-Subsidiaries and
their creditors.  Each of the TOUSA Board Directors possessed a substantial amount of TOUSA
stock at the time they approved the Transaction.  According to TOUSA's form 14C filed on July
9, 2007, the largest amount of TOUSA stock held by a TOUSA Board Director was 2,655,009
shares, while the smallest amount held was 13,148.  Certain TOUSA Board Directors also
possessed stock options and other forms of compensation pegged to the price of TOUSA's stock.
For example, Defendant Mon owned more than five-percent of TOUSA's outstanding common
stock, and Defendant K. Stengos personally owned more than five-percent of Tech SA's
outstanding stock.  Each member of the TOUSA Board therefore had a strong personal incentive
in ensuring that the value of their stock holdings was maintained at all costs.

160.    At the time the Transaction was approved, a number of the Director Defendants
either owed fiduciary duties to TOUSA as well as to the Conveying-Subsidiaries, or had
significant financial interests in TOUSA, rendering them conflicted with respect to the
Transaction.

161.    For example, Defendant Berkowitz, in addition to being a Subsidiary Director,
also served as TOUSA's Executive Vice-President and Chief of Staff.  Defendant Wagman, in
addition to being a Subsidiary Director, also served as TOUSA's Executive Vice-President and
Chief Financial Officer.  Defendant Devendorf, in addition to being a Subsidiary Director, also
served as TOUSA's Executive Vice-President and Treasurer.  Defendant Schoenborn, in addition

to being a Subsidiary Director, was also TOUSA's Assistant Treasurer. These Subsidiary

Directors were dependent upon TOUSA for continued employment and compensation and were

beholden to TOUSA's interests, to the detriment of the Conveying-Subsidiaries and their

creditors.

162.    Defendant Mon was likewise conflicted, if not to a greater degree. Defendant

Mon, in addition to serving on TOUSA's Board, was TOUSA's President and Chief Executive

Officer. One week before TOUSA entered into the Transaction, Defendant Mon and TOUSA

agreed that Defendant Mon would be eligible for a multi-million dollar bonus payment if

TOUSA settled claims arising out of the Transeastern Debt (the "<u>Mon Transeastern Bonus</u>").

TOUSA disclosed in its July 24, 2007 8-K report to the SEC that half of Mon's $4.5 million

target incentive bonus was contingent upon, among other things, the successful completion of the

July 31 Transaction. The Mon Transeastern Bonus was contingent upon, and accomplished

through, the Conveying-Subsidiary Directors taking on the New Debt, the proceeds of which

provided no benefit to the Conveying-Subsidiaries.

## COUNT I

## <u>Breach Of Fiduciary Duty</u>
## <u>(Against TOUSA Board Directors)</u>

163.    The Committee repeats and realleges each and every allegation above as if fully

set forth herein.

164.    By virtue of TOUSA Board Directors' positions, a fiduciary relationship existed

between each TOUSA Board Director and the Conveying-Subsidiary he/she served, by virtue of

TOUSA's role as a direct or indirect member or manager. Additionally, as the Conveying-

Subsidiaries were insolvent as of June/July 2007, the TOUSA Board Director owed fiduciary

duties to Conveying-Subsidiaries and the Conveying-Subsidiaries' stakeholders, including their

creditors.  Alternatively, the TOUSA Board Directors owed fiduciary duties exclusively to the Conveying-Subsidiaries' creditors.

165.    As a fiduciary, each TOUSA Board Director was obligated by his/her duty of loyalty to act in a fully informed manner, in a manner consistent with the interests of the Conveying-Subsidiary he/she served, and with the highest degree of good faith.

166.    As a fiduciary, each TOUSA Board Director was also obligated by his/her duty of care to act at all times using the amount of care that a reasonable person would use under similar circumstances.

167.    The TOUSA Board Directors breached their fiduciary duties to the Conveying-Subsidiaries and their creditors – including the duties of loyalty, care and good faith – and acted with gross negligence and recklessness, by failing to investigate and inform themselves properly of the effect of the Transaction on the Conveying-Subsidiaries and their creditors, by abdicating their decision-making authority on behalf of the Conveying-Subsidiaries and not acting in the best interests of the Conveying-Subsidiaries, and by entering into the Transaction solely to benefit TOUSA, Homes LP, and TOUSA's shareholders.

168.    The TOUSA Board Directors' breach of their fiduciary duties damaged the Conveying-Subsidiaries and their creditors by, among other things, (a) improperly harming and diminishing the value of the Conveying-Subsidiaries through the incurrence of the secured New Debt, for the sole purpose of satisfying the existing obligations of TOUSA and Homes LP; and (b) improperly subordinating the interests of the Conveying-Subsidiaries' existing creditors in the Conveying-Subsidiaries' assets to the New Lenders, when the Conveying-Subsidiaries were forced to become jointly and severally liable co-borrowers and guarantors of the secured New

Debt, which was used for the sole purpose of satisfying existing obligations of TOUSA and Homes LP.

## COUNT II

### Aiding and Abetting Breach Of Fiduciary Duty
### (Against TOUSA Board Directors)

169.    The Committee repeats and realleges every allegation above as if fully set forth herein.

170.    If and to the extent that any TOUSA Board Director is found not to have owed a fiduciary duty to the Conveying-Subsidiaries at the time of the Transaction, any such TOUSA Board Director, in the alternative, is liable for substantially and knowingly participating in, inducing, encouraging, substantially assisting, and/or aiding or abetting the breaches of fiduciary duty committed by one or more of the Subsidiary Directors owing such fiduciary duties to the Conveying-Subsidiaries at the time of the Transaction.  The TOUSA Board approved the Transaction, presented the Conveying-Subsidiaries with the Consents, and directed the Subsidiary Directors to cause the Conveying-Subsidiaries to take on the New Debt for the benefit of TOUSA, Homes LP, and TOUSA's shareholders.

171.    By aiding and abetting the Subsidiary Directors, the TOUSA Board Directors damaged the Conveying-Subsidiaries and their creditors by, among other things, (a) improperly harming and diminishing the value of the Conveying-Subsidiaries through the incurrence of the secured New Debt, for the sole purpose of satisfying the existing obligations of TOUSA and Homes LP; and (b) improperly subordinating the interests of the Conveying-Subsidiaries' existing creditors in the Conveying-Subsidiaries' assets to the New Lenders, when the Conveying-Subsidiaries were forced to become jointly and severally liable co-borrowers and

guarantors of the secured New Debt, which was used for the sole purpose of satisfying existing

obligations of TOUSA and Homes LP.

## COUNT III

### Breach Of Fiduciary Duty
### (Against TOUSA Subsidiary Directors)

172.    The Committee repeats and realleges each and every allegation above as if fully

set forth herein.

173.    By virtue of the Subsidiary Directors' positions, a fiduciary relationship existed

between each Subsidiary Director and the Conveying-Subsidiary he/she served.  Additionally, as

the Conveying-Subsidiaries were insolvent as of June/July 2007, the Subsidiary Director

Defendants also owed fiduciary duties to Conveying-Subsidiaries and the Conveying-

Subsidiaries' stakeholders, including their creditors.  Alternatively, the Subsidiary Director's

owed fiduciary duties exclusively to the Conveying-Subsidiaries' creditors.

174.    As a fiduciary, each Subsidiary Director was obligated by his/her duty of loyalty

to act in a fully informed manner, in a manner consistent with the interests of the Conveying-

Subsidiary he/she served, and with the highest degree of good faith.

175.    As a fiduciary, each Subsidiary Director was also obligated by his/her duty of care

to act at all times using the amount of care that a reasonable person would use under similar

circumstances.

176.    The Subsidiary Directors breached their fiduciary duties to the Conveying-

Subsidiaries and their creditors – including the duties of loyalty, care and good faith – and acted

with gross negligence and recklessness, by failing to investigate and inform themselves properly

of the effect of the Transaction on the Conveying-Subsidiaries and their creditors, by abdicating

their decision-making authority on behalf of the Conveying-Subsidiaries and not acting in the

best interests of the Conveying-Subsidiaries, and by entering into the Transaction solely to benefit TOUSA, Homes LP, and TOUSA's shareholders.

177.    The Subsidiary Directors' breaches of their fiduciary duties damaged the Conveying-Subsidiaries and their creditors by, among other things, (a) improperly harming and diminishing the value of the Conveying-Subsidiaries through the incurrence of the secured New Debt, for the sole purpose of satisfying the existing obligations of TOUSA and Homes LP; and (b) improperly subordinating the interests of the Conveying-Subsidiaries' existing creditors in the Conveying-Subsidiaries' assets to the New Lenders, when the Conveying-Subsidiaries were forced to become jointly and severally liable co-borrowers and guarantors of the secured New Debt, which was used for the sole purpose of satisfying existing obligations of TOUSA and Homes LP.

**COUNT IV**

**<u>Breach of Fiduciary Duty</u>**
**<u>(Against Defendant McAden)</u>**

178.    The Committee repeats and realleges every allegation above as if fully set forth herein.

179.     By virtue of Defendant McAden's position on the TOUSA Board, a fiduciary relationship existed between Defendant McAden and the Conveying-Subsidiaries he served, by virtue of TOUSA's role as a direct or indirect member, or manager.  Additionally, as the Conveying-Subsidiaries were insolvent as of June/July 2007, Defendant McAden owed fiduciary duties to the Conveying-Subsidiaries' stakeholders, including their creditors.  Alternatively, Defendant McAden owed fiduciary duties exclusively to the Conveying-Subsidiaries' creditors.

59

180.    As a fiduciary, Defendant McAden was obligated by his duty of loyalty to act in a fully informed manner, in a manner consistent with the interests of the Conveying-Subsidiary he served, and with the highest degree of good faith.

181.    As a fiduciary, Defendant McAden was also obligated by his duty of care to act at all times using the amount of care that a reasonable person would use under similar circumstances.

182.    Defendant McAden recused himself from the TOUSA Board meetings relating to the Transaction because he also served as the President of the Transeastern JV.

183.    Defendant McAden's recusal did not eliminate the fiduciary duties he owed to the Conveying-Subsidiaries. Defendant McAden breached his fiduciary duties to the Conveying-Subsidiaries and their creditors – including the duties of loyalty, care and good faith – and acted with gross negligence and recklessness, by failing to object to the Transaction or notify other of the Director Defendants that he was privy to information indicating the danger of entering into the Transaction. Rather, Defendant McAden shared his comments regarding the Strategic Alternatives Memo exclusively with Defendant Mon and the advisor to the Stengos Defendants.

184.    In spite of questioning the advisability of the Transaction, Defendant McAden breached his fiduciary duties to the Conveying-Subsidiaries by remaining silent, hiding behind his vote abstention, and failing to act in the best interest of the Conveying-Subsidiaries and their creditors. Defendant McAden acted solely in the interests of TOUSA's stockholders.

## COUNT V

### Aiding and Abetting Breach Of Fiduciary Duty
### (Against Tech SA)

185.    The Committee repeats and realleges each and every allegation above as if fully set forth herein.

186.    The Director Defendants breached their fiduciary duties to the Conveying-Subsidiaries and their creditors – including their duties of loyalty, care and good faith – and acted with gross negligence and recklessness in connection with approving the Transaction in the manner they did.

187.    Tech SA, through its agents, aided, abetted, induced, encouraged, substantially assisted, and/or participated in the breaches of fiduciary duty by Director Defendants by, among other things, foreclosing efforts to find equity investment and pressuring certain of the Director Defendants into funding the Transaction through the New Debt.

188.    Tech SA's aiding and abetting breaches of fiduciary duty damaged the Conveying-Subsidiaries and their creditors by, among other things, (a) improperly harming and diminishing the value of the Conveying-Subsidiaries through the incurrence of the secured New Debt, for the sole purpose of satisfying the existing obligations of TOUSA and Homes LP; and (b) improperly subordinating the interests of the Conveying-Subsidiaries' existing creditors in the Conveying-Subsidiaries' assets to the New Lenders, when the Conveying-Subsidiaries were forced to become jointly and severally liable co-borrowers and guarantors of the secured New Debt, which was used for the sole purpose of satisfying existing obligations of TOUSA and Homes LP.

## RESERVATION OF RIGHTS

189.    This Complaint is based on the documents provided by the Debtors to date.  The Committee believes that additional claims in favor of one or more of the Debtors' estates against Defendants and/or other parties may exist.  The Committee reserves any and all rights to bring such claims to the extent authorized by the Court and/or applicable law.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiffs pray for judgment:

(1)     awarding Plaintiffs judgment in an amount to be determined at trial, including compensatory and punitive damages;

(2)     awarding Plaintiff their attorneys' fees, costs and other expenses incurred in this action; and

(3)     granting Plaintiff such other and further relief as the Court deems appropriate.

Dated:  February 19, 2010

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**


By:____/s/ Patricia A. Redmond_____

Patricia A. Redmond (Florida Bar No. 303739)
150 West Flagler Street
Miami, Florida  33130
Telephone:  (305) 789-3553
Facsimile:  (305) 789-3395
predmond@sternsweaver.com

-and-

We hereby certify that the undersigned attorneys are appearing pro hac vice in this matter pursuant to Court orders dated February 27, 2008, November 6, 2009 and March 3, 2008.

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Daniel H. Golden (New York Bar No. 1133859)
Stephen M. Baldini (New York Bar No. 2428381)
Philip C. Dublin (New York Bar No. 2959344)
One Bryant Park
New York, NY  10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

*Co-Counsel to the Official Committee of Unsecured Creditors of TOUSA, Inc., et al.*