**Tagged Opinion**



## ORDERED in the Southern District of Florida on October 04, 2010.

**John K. Olson, Judge**
**United States Bankruptcy Court**

_____

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
#### Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

       **TOUSA, Inc.**, *et al.*,

            Debtors.

_____/

      **Official Committee of Unsecured**
      **Creditors of TOUSA, Inc.,** *et al.*,

           Plaintiff,

-v-

      **Technical Olympic, S.A.**, *et al.*,

           Defendants.

_____/

Chapter 11 Cases

Case No. 08-10928-BKC-JKO
*(Jointly Administered)*

Adversary Proceeding No.

09-1616-JKO

### Order Denying Motions to Dismiss Amended Complaint[1]

       The Official Committee of Unsecured Creditors (the "Committee") filed a 62-page Amended

Complaint on February 19, 2010 alleging breaches of fiduciary duties as well as aiding and abetting

_____

[1]  This order denies the motions at ECF Nos. 107, 109, 110, 111, 113, 114, and 129 seeking to dismiss the Amended Complaint at ECF No. 93. (Docket entries are now cited as "ECF No." *See* THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION, B7.1.4, at 21 (Columbia Law Review Ass'n, *et al.*, eds., 19th ed. 2010).

those breaches.[2]  All of the Defendants filed motions to dismiss which (inclusive of exhibits, memoranda, etc.) total 447 pages.[3]  The Committee filed an 80-page Omnibus Response to the motions on April 3, 2010,[4]  I conducted a hearing on April 19, 2010, and took the matter under advisement because the filings were voluminous with substantial case law citation.

The issues are whether the Amended Complaint states claims which would entitle the Plaintiff to relief, and whether the Amended Complaint alleges sufficient factual detail to satisfy the heightened pleading standards of *Twombley* and *Iqbal*.[5]  For the reasons below, I find the Amended Complaint sufficient and will deny all seven motions to dismiss.

*Overview*

This action arises out of TOUSA, Inc.'s decision to borrow, and to cause many of its subsidiaries to borrow, $500 million on July 31, 2007, as well as its decision to secure that debt by granting the lenders liens on substantially all of the subsidiaries' assets.  TOUSA undertook this transaction to settle litigation which arose from an unsuccessful 2005 business venture.

Most of the conveying subsidiaries are incorporated in Delaware, and a minority are incorporated in Arizona, Colorado, Florida, Nevada, and Texas.  The Defendants almost exclusively rely upon Delaware law because they argue that the Committee's claims primarily involve the internal affairs of business entities formed in Delaware.  The Committee follows the Defendants' approach in its omnibus opposition.  On the issues presented in these motions, there is no apparent

---

[2]  *See* Am. Compl., ECF No. 93.

[3]  *See* Defs.' Mots. Dismiss Am. Compl., ECF Nos. 107, 109, 110, 111, 113, 114, and 129.

[4]  *See* Pl.'s Omnibus Resp., ECF No. 130.

[5]  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. ___ , 129 S. Ct. 1937 (2009)

substantial conflict between Delaware law and the laws of the other states of incorporation.  I will therefore apply Delaware law.[6]    I exercise jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and find that this is a core proceeding under § 157(b)(2)(O).  I further find that venue is proper under § 1409(a).

### Standard of Review

The purpose of a motion to dismiss is not to resolve disputed facts or decide the merits of a case.[7]  Rather, its sole purpose is to ensure that the Plaintiff has provided notice of the grounds which entitlement him to relief.[8]  "To survive a motion to dismiss, a complaint need not contain 'detailed factual allegations,' but it must contain sufficient factual allegations to suggest the required elements of a cause of action."[9]  Neither formulaic recitation of the cause of action's elements, nor mere labels, nor mere legal conclusions will withstand a motion to dismiss under Fed. R. Bankr. P. 7012(b), incorporating Fed. R. Civ. P. 12(b)(6).[10] "This is a stricter standard than the Supreme Court described in *Conley v. Gibson* . . . which held that a complaint should not be dismissed for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support

---

[6]  *See In re Friedlander Capital Mgmt. Corp.*, 411 B.R. 434, 442 (Bankr. S.D. Fla. 2009) (Hyman, J.) ("As to Florida's choice of law rules, '[c]laims involving 'internal affairs' of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation.'") (*quoting Chatlos Found., Inc. v. D'Arata*, 882 So. 2d 1021, 1023 (Fla. 5th DCA 2004)).

[7]  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[8]  *See Twombly*, 550 U.S. at 555.

[9]  *Mukamal v. Bakes*, No. 08-14346, 2010 WL 1731775, at *5 (11th Cir. Apr. 30, 2010) (citing *Twombly*, 550 U.S. at 554-55; *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007)).

[10]  *Id.* (citing *Twombly*, 550 U.S. at 555-56).

of his claim which would entitle him to relief.'"[11]   Under the heightened pleading standards of *Twombly* and *Iqbal*, a complaint cannot suggest the existence of a claim; it must contain "enough facts to state a claim to relief that is plausible on its face."[12]   The facts alleged in the Amended Complaint must be taken as true, and dismissal is inappropriate merely because it appears unlikely that the Plaintiff can prove those facts or will ultimately prevail on the merits.[13]

*Discussion*

I.    **Summary of the Claims**

Count I of the Amended Complaint alleges that the defendant directors, officers, and managers of TOUSA, Inc. breached fiduciary duties owed to the stakeholders (including creditors) of insolvent subsidiaries.   Count II alleges that the defendant directors, officers, and managers of TOUSA, Inc. aided and abetted breaches of fiduciary duties by "substantially and knowingly participating in, inducing, encouraging, substantially assisting, and/or aiding or abetting the breaches of fiduciary duty"[14] committed by directors, officers, and managers of the conveying subsidiaries. Count III alleges breaches of fiduciary duty by directors, officers, and managers of the conveying subsidiaries.   Count IV alleges breach of fiduciary duty by defendant Tommy McAden, a member of the TOUSA, Inc. Board of Directors who abstained from the decision to proceed with the July 2007 transaction.   Count V alleges aiding and abetting breaches of fiduciary duties by Technical

---

[11]   *Id.* (citing *Twombly*, 550 U.S. at 557; *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[12]   *Id.* (citing *Twombly*, 550 U.S. at 570).

[13]   *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

[14]   Am. Compl., ECF No. 93, at ¶ 170.

Olympic, S.A., a construction company based in Athens, Greece which owned approximately 67% of TOUSA, Inc.'s stock at the time of the July 2007 transaction.

## II.    Summary of the Motions to Dismiss

This single order addresses seven motions to dismiss by twenty defendants.  The motions have much in common, and I will summarize each motion here:

### A.    The Stengos Motion[15]

The Stengos Motion alleges that the Amended Complaint:  (1) fails to state a claim for breach of duty against the Stengos directors; (2) fails to state a claim for aiding and abetting breaches of fiduciary duty against the Stengos directors; (3) fails to state a claim for aiding and abetting fiduciary duty breaches against Technical Olympic, S.A.; and (4) should be dismissed because the claims are moot anyway.  The Stengos defendants argue that the Committee's claims against them are direct claims which are improper under Delaware law; that they do not owe any duties to the conveying subsidiaries or their creditors; that even if they did owe duties, the Amended Complaint fails to state sufficient factual detail to survive their motion to dismiss; and that the exculpatory provision in TOUSA's certificate of incorporation bars any claim against them for breach of the duty of care.  They further argue that, even if the Committee's aiding and abetting claim were derivative rather than direct, it is essentially a claim for aiding and abetting a fraudulent transfer and is therefore not a cognizable cause of action.  Alternatively they argue that, even if it

---

[15] ECF No. 107 is the Motion to Dismiss Adversary Proceeding filed by Defendants Andreas Stengos, George Stengos, Konstantinos Stengos, Marianna Stengou, and Technical Olympic, S.A. (the "Stengos Motion").  The Stengos Motion is supported by the movants' Memorandum of Law at ECF No. 108.

were cognizable, the Amended Complaint does not sufficiently allege the elements of the claim and contains insufficient factual detail.

### B.    The Outside Directors' Motion

The Outside Directors' Motion[16] alleges that the Amended Complaint:  (1)  improperly asserts a direct claim by creditors for breach of fiduciary duty that is expressly barred under Delaware law; (2) does not establish the existence of a fiduciary relationship between the nine subsidiaries and the Outside Directors; (3) does not state a claim for breach of fiduciary duty against any defendant because corporate directors are afforded substantial protections under Delaware law; (4) contains claims for deepening insolvency which are not permitted under Delaware law; (5) fails to state a claim for aiding and abetting the breaches of fiduciary duties of others; (6) asserts moot claims because relief has already been awarded in substantially similar form; and (7) contains conclusory allegations regarding the subsidiaries, their purported insolvency, and the Outside Directors rather than the requisite factual detail to survive a motion to dismiss.

### C.    The Subsidiary D&O Motion

The Subsidiary D&O Motion[17] argues that Count III of the Amended Complaint is an impermissible direct creditor claim dressed up as a derivative action.  The motion also argues that, even if this were a properly pled derivative claim, the Committee failed to allege facts sufficient to overcome the business judgment rule and the exculpatory provisions contained in the relevant

---

[16]  ECF No. 109 is the Motion to Dismiss Adversary Proceeding filed by Defendants William Hassler, Larry Horner, Susan Parks, Michael Poulos, and J. Bryan Whitworth (the "Outside Directors' Motion").

[17]  ECF No. 110 is the Motion to Dismiss Adversary Proceeding filed by Defendants Paul Berkowitz, Russell Devendorf, Dave Schoenborn, Stephen Wagman (the "Subsidiary D&O Motion").

operating agreements and certificates of incorporation.  Finally, these defendants argue that the Committee makes nothing more than a conclusory allegation that the subsidiary debtors were damaged, while conceding that the July 2007 transaction was ordered unwound by the October 2009 order in adversary proceeding 08-01435-JKO.  These defendants accordingly believe that the October 2009 judgment moots the Committee's claim because the subsidiary debtors have not been damaged.

### D.    The Mon Motion

The Mon Motion[18] argues that the Amended Complaint fails because the Committee is pursuing direct creditor claims for breach of fiduciary duty, and this is barred under Delaware law. Mr. Mon also argues that he owed no fiduciary duties to subsidiaries by virtue of his status as a director of the parent entity, and therefore largely relies upon the Stengos Motion because he is similarly situated.  Accordingly, Mr. Mon concentrates on TOUSA Associates Services Company ("TAS") because that is the one subsidiary where he acted as a director.  Mr. Mon argues that the Amended Complaint does not explain what assets TAS held or how they were affected by the July 2007 transaction, and that this means the Amended Complaint lacks an essential element of the claim - a plausible explanation of injury suffered by TAS.  Finally, he argues that the Committee's claims for breach of fiduciary duty fail to overcome the protection of the business judgment rule.

---

[18]  ECF No. 111 is the Motion to Dismiss Amended Complaint filed by Defendant Antonio Mon (the "Mon Motion"). The Mon Motion is supported by the movant's Memorandum of Law at ECF No. 112.

### E.    The Konderik Motion

The Konderik Motion[19] argues that the Committee has failed to show standing to pursue a breach of fiduciary duty action against him.  He argues that the Committee cannot make this showing because: (1) it is asserting a direct claim for breach of fiduciary duty precluded as a matter of law; and (2) as a manager, Konderik is shielded from personal liability.  The motion argues that this action is clearly direct, rather than derivative, because the Committee used some inconsistent phrasing and its "wherefore" clause seeks payment to the "Plaintiff" rather than to the subsidiary corporations.  Of course, if the Committee were to prevail in this action, recovery would be for the benefit of the debtors' bankruptcy estates.

### F.    The Stewart/McAndrew/Corra Motion

The Stewart/McAndrew/Corra Motion[20] argues that Count III of the Amended Complaint fails to provide sufficient factual detail to support a claim for breach of fiduciary duty.  Specifically, the motion takes issue with paragraph 173 of the Amended Complaint as being a conclusory allegation that these defendants owed fiduciary duties to all of the conveying subsidiaries and their creditors because the conveying subsidiaries were insolvent.  Of course, the Amended Complaint specifically lists defendants in paragraphs 14-72 along with the subsidiaries to which each owed fiduciary duties.  Specifically, these defendants are alleged to be fiduciaries of specific entities in paragraphs 61, 63, and 65.  But the motion goes on to argue that, with respect to the conveying subsidiaries to which these defendants do owe fiduciary duties, insufficient facts are alleged

---

[19]   ECF No. 113 is the Motion to Dismiss Adversary Proceeding and Incorporated Memorandum of Law filed by Defendant Brian Konderik (the "Konderik Motion").

[20]   ECF No. 114 is the Motion to Dismiss Amended Complaint filed by Defendants Candace Corra , Tom McAndrew, and Gordon Stewart (the "Stewart/McAndrew/Corra Motion").

8

regarding the breaches of duties owed.  These defendants believe that Count III of the Amended Complaint fails to state sufficient facts to overcome the business judgment rule, and that even if that rule is overcome, the Committee is improperly asserting direct breach of fiduciary duty claims and deepening insolvency claims which are barred by Delaware law and the exculpatory provisions in the conveying subsidiaries' corporate documents.  Finally, the motion argues that, even if the Amended Complaint properly states breach of fiduciary duty claims, relief has already been granted by the October 2009 order and this action is moot.

### G.    The McAden Motion

The McAden Motion[21] argues that the Amended Complaint fails to state a claim for breach of fiduciary duty because: (1) the Committee fails to adequately allege that Mr. McAden owed fiduciary duties; (2) the Committee fails to allege that Mr. McAden breached fiduciary duties; and (3) the claims are barred by the exculpatory provision in TOUSA's charter.  The motion also argues that the Committee is asserting impermissible direct creditor claims for breach of fiduciary duty, and that relief is moot because the subsidiaries have suffered no damages. The primary difference between this motion and the others is that Mr. McAden believes his recusal shields him from liability as a matter of law.  But under Delaware law, "no *per se* rule unqualifiedly and categorically relieves a director from liability *solely* because that director refrains from voting on the challenged transaction."[22]  The Committee has alleged in paragraph 124 of the Amended Complaint that Mr. McAden contributed to analysis showing that the July 2007 transaction would result in adverse

---

[21]  ECF No. 129 is the Motion to Dismiss Adversary Proceeding filed by Defendant Tommy McAden (the "McAden Motion").

[22]  *In re Tri-Star Pictures, Inc., Litig.*, Civ. A. No. 9477, 1995 WL 106520 at *3 (Del. Ch. March 9, 1995).

consequences, that he was aware of red flags surrounding the transaction, that he chose to not disclose a memorandum on strategic alternatives to anyone outside the Stengos directors and Mr. Mon, and that he took no other action to warn the company.  Delaware law does not invariably protect an abstaining director when that director plays a role in the negotiation, structuring, or approval of the proposal in question.[23]  The Committee has alleged that Mr. McAden participated in a legally significant way in the TOUSA board's decision-making process and, for pleading purposes, Mr. McAden is not shielded from liability as a matter of law.[24]

## II.    The Committee is Asserting Derivative, Not Direct, Claims for Breaches of Fiduciary Duties Owed to the Conveying Subsidiary Debtors.

The Defendants insist that the Committee's causes of action are direct creditor claims masquerading as derivative claims.  This was not the case on June 1, 2009, when I granted the Committee derivative standing to pursue the Claims on behalf of and for the benefit of the Conveying Subsidiaries' estates.[25]  Any recovery on behalf of a conveying subsidiary in this adversary proceeding will go to the estate of that conveying subsidiary, not to the Committee.

While Delaware law prohibits creditors of an insolvent corporation from bringing direct breach of fiduciary duty claims against the corporation's directors:[26]

---

[23]  *See Gesoff v IIC Indus., Inc.*, 902 A.2d 1130, 1166 n.202 (Del. Ch. 2006).

[24]  *See, e.g., Emerald Partners v. Berlin*, No. 9700, 2003 WL 21003437, at *42–43 (Del. Ch. Apr. 28, 2003) (The defendant, "did not participate in any legally significant way in the Board's decision-making process."); *In re Wheelabrator Techs. Inc. S'holders Litig.*, No. 11495, 1992 WL 212595, at *10 (Del. Ch. Sept. 1, 1992) (directors who do not participate in any manner with a proposed merger cannot be held responsible for breaching any fiduciary duties in connection with the merger); *Citron v. E.I. Du Pont de Nemours & Co.*, 584 A.2d 490, 499 (Del. Ch. 1990).

[25]  Order Granting Leave, Standing and Authority to the Official Committee of Unsecured Creditors of TOUSA Inc., *et al.*, to Prosecute and If Appropriate Settle Certain Causes of Action on Behalf of the Debtors' Estates, Main Case No. 08-10928, June 1, 2009, ECF No. 2828.

[26]  *See N. Am. Catholic Programming Found. v. Gheewalla*, 930 A.2d. 92 (Del. 2007).

> [w]hen a corporation is insolvent … its creditors take the place of the shareholders as the residual beneficiaries of any increase in value. Consequently, the creditors of any insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties.[27]

The proper analysis to distinguish between direct and derivative actions "must be based solely on the following questions: Who suffered the alleged harm-the corporation or the suing stockholder individually-and who would receive the benefit of the recovery or other remedy?"[28]  With respect to the Committee's claims, the answers to the questions concerning harm and remedy are in both instances "the Conveying Subsidiaries."  The Amended Complaint alleges at paragraph 5 that "as a result of the Transaction, the Conveying Subsidiaries were saddled with a massive amount of secured debt for which they received little or no value in return, became financially hamstrung as the company and the market collapsed, and were unable to access necessary credit and liquidity or pursue other options."  At paragraphs 168 and 177, the Amended Complaint alleges that the July 2007 transaction "improperly harm[ed] and diminish[ed] the value of the Conveying Subsidiaries through the incurrence of the secured New Debt, for the sole purpose of satisfying the existing obligations of TOUSA and Homes LP."  With respect to the question of who will receive the benefit of the recovery in the action, one need only consult paragraph 4 of the June 1, 2009 order granting the Committee standing to pursue the claims: any recovery in this adversary proceeding becomes

---

[27] *Id.* at 101; *see also Schoon v. Smith*, 953 A.2d 196, 208 n.46 (Del. 2008) ("*Gheewalla* confers standing upon creditors to bring a derivative action where the corporation is insolvent, but only because the shareholders of an insolvent corporation no longer have an economic interest in the corporate entity-only its creditors have that interest. Only for that reason and in that context does *Gheewalla* permit creditors to stand in the shoes of the shareholders."); *In re MS55*, No. 06-CV-01233-EWN, 2008 WL 2358699, at *3 (D. Col. June 6, 2008) ("Regardless of whether directors owe creditors direct fiduciary duties, it is undisputed that, under Delaware law, directors owe the corporation and its shareholders fiduciary duties, *see, e.g., Gheewalla*, 930 A.2d at 99, and creditors have standing to invoke that duty and bring a derivative claim against directors on behalf of the debtor corporation in the zone of insolvency to remedy the injuries the creditor suffered as a result of the injuries to the debtor." *Id.* at 101-02.).

[28] *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004).

property of the debtor estates that were harmed by the breaches.  That the Debtors retain the authority to settle the Claims the Committee brings on behalf of the Conveying Subsidiaries is further support that the Claims are derivative.

The Defendants nevertheless argue that the Committee's allegations render its claims direct. But the allegations concerning the subsidiaries' creditors are consistent with the claims' derivative nature.  The Committee alleges in paragraph 133 of the Amended Complaint that "[t]he insolvency of the Conveying Subsidiaries before and after the Transaction resulted in the Director Defendants owing fiduciary duties … to the creditors" because, upon insolvency, "creditors take the place of the shareholders as the residual beneficiaries of any increase in value."[29] Likewise, the Committee alleges in paragraph 168 of the Amended Complaint that the July 2007 transaction damaged the conveying subsidiaries' creditors by subordinating the interests of their existing creditors to the new secured lenders.  This is because "[t]he corporation's insolvency 'makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value.'"[30] Courts routinely hold that claims like those asserted in the Amended Complaint constitute derivative causes of action.[31]  The contentions by the defendants that the claims the Committee asserts are not derivative

---

[29]  *Gheewalla*, 930 A.2d at 101.

[30]  *Id.* at 102 (quoting *Prod. Res. Grp., LLC v. NCT Grp., Inc.*, 863 A.2d 772, 794 n. 67 (Del. Ch. 2004)).

[31]  *See Seidel v. Byron*, 405 B.R. 277, 288 (N.D. Ill. 2009) ("Based on [Delaware] case law, the Court finds that [the Chapter 7 Trustee] has properly stated a derivative claim for breach of fiduciary duty on behalf of [the Debtor's] creditors, and declines to dismiss on this ground."); *In re VarTec Telecom, Inc.*, No. 04-81694-HDH-7, 2007 WL 2872283, at *3-4 (Bankr. N.D. Tex. Sept. 24, 2007) (holding that trustee pleaded claims for breach of fiduciary duties within insolvency exception to Delaware rule that wholly-owned subsidiaries operated for benefit of their parent corporations, and that trustee could bring derivative claim for breach of fiduciary duty on behalf of debtor's creditors); *Medlin v. Wells Fargo Bank, N.A. (In re I.G. Servs., Ltd.)*, Nos. 99-53170-C, 99-53171-C, 2007 WL 2229650 at *3 (Bankr. W.D. Tex. July 31, 2007) ("the creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties"); *Official Comm. Of Unsecured Creditors v. Clark (In re Nat'l Forge Co.)*, 326 B.R. 532, 547 (W.D. Pa. 2005) ("We conclude that the Bankruptcy Court did not err in granting the Committee derivative standing . . . " for fraudulent transfer and breach of fiduciary duty claims).

in nature (or that the conveying subsidiaries and their creditors are not owed fiduciary duties upon insolvency) fly in the face of well-settled case law.

Delaware law is clear that directors and officers of an insolvent, wholly-owned subsidiary owe fiduciary duties to the subsidiary and its creditors.[32]  The Delaware Chancery Court explained that holding directors of a wholly-owned, insolvent subsidiary liable for breaches of fiduciary duties to the subsidiary and the subsidiary's creditors can be rationalized in traditional terms.  "If the firm is insolvent, its residual claimants are the creditors and it is for their benefit that the directors must now manage the firm. A purposeful fraudulent transfer to stockholders who are 'out of the money' is obviously inconsistent with the best interest of the creditors, the firm's new residual claimants."[33] Even outside of the context of insolvency, "[i]ndividuals who act in a dual capacity as directors of two corporations, one of who[m] is parent and the other subsidiary, owe the same duty of good management to both corporations…"[34]  The Supreme Court has held it is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership."[35]  The presumption is that "directors are wearing their 'subsidiary hats' and

---

[32]  *Claybrook v. Morris (In re Scott Acquisition Corp.)*, 344 B.R. 283, 290 (Bankr. D. Del. 2006) ("Thus, the Court rejects the suggestion that upon insolvency a director of a wholly-owned subsidiary owes a duty to that corporation's creditors but not to the corporation itself. A more natural reading of Delaware law is that upon insolvency directors of a wholly-owned subsidiary owe fiduciary duties to the subsidiary and its creditors."); *Collins v. Kohlberg & Co. (In re Southwest Supermarkets, LLC)*, 376 B.R. 281, 285 (Bankr. D. Ariz. 2007) ("Once the subsidiary becomes insolvent, Delaware law recognizes that the fiduciary duties shift to the creditors. Once they do, the effect is that there is more than one equitable beneficiary of those duties.").

[33]  *Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 204, n.96 (Del. Ch. 2006), *aff'd*, 931 A.2d 438 (Del. 2007).

[34]  *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983).

[35]  *United States v. Bestfoods*, 524 U.S. 51, 69 (1998).

13

not their 'parent hats' when acting for the subsidiary."[36] Indeed, "[t]here is no basis for the principle

… that the directors of an insolvent subsidiary can, with impunity, permit it to be plundered for the

benefit of its parent corporation."[37]

The Third Circuit has explained why a subsidiary's insolvency is a fiduciary duty

game-changer:

> In a parent and wholly-owned subsidiary context, the directors of the
> subsidiary are obligated only to manage the affairs of the subsidiary
> in the best interest of the parent and its shareholders . . . [T]he only
> interest of a wholly owned subsidiary is in serving its parent. That
> doing so may not always maximize the subsidiary's economic value
> is of little concern. If the subsidiary is not wholly owned, however,
> in the interest of protecting minority shareholders we revert to
> requiring that whoever controls the subsidiary seek to maximize its
> economic value with requisite care and loyalty. Similarly, if the
> subsidiary is insolvent, we require the same in the interest of
> protecting the subsidiary's creditors.[38]

---

[36] *Id.*

[37] *In re Scott Acquisition*, 344 B.R. at 288; *see also ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 395 (S.D. Tex. 2008) ("As a general rule, a director owes a fiduciary duty only to its corporation and its shareholders (not its creditors). When a corporation is a wholly owned subsidiary, the directors' duties to the corporation benefit the parent as the sole shareholder. New Jersey and Delaware have both adopted an 'insolvency exception' to this general rule. If the wholly owned subsidiary is insolvent, the director's fiduciary duties to the corporation run to the benefit of the creditors. 'The fact of insolvency places the creditors in the shoes normally occupied by the shareholders-that of residual risk-bearers.' The directors' focus is no longer solely on its shareholders' interests, but also on the creditors' interests.") (internal citations omitted); *see also RSL Commc'n PLC ex rel. Jervis v. Bildirici*, No. 04-CV-5217 (KMK), 2006 WL 2689869, at *9 (S.D.N.Y. Sept. 14, 2006) ("Therefore, in a situation such as is alleged here, the directors of the subsidiary must consider the subsidiary's creditors' interests in addition to the parent's interests. This means the directors may have to pursue a course which does not benefit any particular group, including shareholders and creditors, over another.") (internal citations omitted).

[38] *Teleglobe Commc'ns Corp. v. BCE, Inc. (In re Teleglobe Commc'n Corp.)*, 493 F.3d 345, 367 (3d Cir. 2007) (internal citations omitted); *see also Buchwald v. Renco Group, Inc. (In re Magnesium Corp.)*, 399 B.R. 722, 773 (Bankr. S.D.N.Y. 2009) ("[Directors and Officers] must then look to the needs and concerns of the subsidiaries for whom they are officers or directors, and must take into account, in any corporate decision-making, the fact that creditors will have a superior claim to corporate assets.") (citing *Production Res. Group. v. NCT Group, Inc.*, 863 A.2d 772, 792 (Del. Ch. 2004)); *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 635-36 (3d Cir. 2007) (holding that where a subsidiary is insolvent "the creditors' investment is at risk, and the directors should manage the [subsidiary] corporation in their interests as well as that of the shareholders").

The rule that in the case of an insolvent subsidiary, fiduciary duties are owed to the subsidiary and its creditors (and not simply to the subsidiary's parent) is consistent with Delaware law that "directors of an insolvent corporation [must] consider … the interests of the corporation's creditors who, by definition, are owed more than the corporation has the wallet to repay."[39]  That creditors are owed fiduciary duties upon insolvency is "uncontroversial," since "directors continue to have the task of attempting to maximize the economic value of the firm."[40]  Both in and out of the parent-subsidiary context, fiduciaries are required to exercise their duty for the "benefit of all those having an interest in [the insolvent company]."[41]

    The Amended Complaint alleges at paragraphs 129-30 that the Conveying Subsidiaries were insolvent before the July 2007 transaction, and alleges at paragraphs 113-16, 118-19, and 128 a number of facts regarding inability to pay debts as they became due.  Although several of the defendants claim that the Committee's insolvency allegation is merely conclusory with insufficient factual detail, a thirteen day trial in this very forum established insolvency, and I must accept the Committee's allegation of insolvency as true at this early pleading stage.  I decline to hold the allegation of insolvency insufficient under *Twombley* and *Iqbal* because the factual record regarding the Committee's allegation of insolvency is well developed and easily accessible within this very bankruptcy case.[42]

---

[39]  *Miller v. McCown De Leeuw & Co. (In re The Brown Schools)*, 386 B.R. 37, 46 (Bankr. D. Del. 2008) (quoting *Trenwick*, 906 A.2d at 205).

[40]  *Production Res.*, 863 A.2d at 790.

[41]  *Gheewalla*, 930 A.2d at 103.

[42]  *See Official Comm. of Unsecured Creditors of TOUSA, Inc., et al. v. Citicorp N. Am., Inc., et al. (In re TOUSA, Inc., et al.)*, 422 B.R. 783 (Bankr. S.D. Fla. 2009).

Because the conveying subsidiaries are alleged to have been insolvent, they and their stakeholders, including creditors, were owed fiduciary duties for purposes of these motions to dismiss. Where a defendant owed fiduciary duties to an insolvent conveying subsidiary, that defendant was required to consider the interests of that subsidiary's creditors in attempting to maximize value for all stakeholders.[43] Each of the subsidiary directors owed fiduciary duties to their respective subsidiaries by virtue of their status as director, officer, manager, or managing trustee of a subsidiary, and this is set forth in the Amended Complaint at paragraphs 49-68. None of the subsidiary directors dispute his/her fiduciary relationship with the subsidiaries he or she served, and some of the defendants' arguments attempting to limit fiduciary duties owed are frivolous and do not appear to be made in good faith because they ignore plainly alleged facts that actions were taken which can only come with fiduciary obligations. That many of these motions devote so much time to the application of Delaware law while ignoring clear Delaware precedent is troublesome.

Delaware law expressly rejects the notion that directors of a corporation owe no fiduciary duties to a limited partnership or LLC controlled by that corporation.[44] "One who controls property of another may not, without implied or express agreement, intentionally use that property in a way that benefits the holder of the control to the detriment of the property or its beneficial owner."[45] As the court in *USA Cafes* rhetorically asked, where an individual uses a corporate entity to cause a partnership/LLC to enter into a transaction which injures the partnership/LLC but rewards the

---

[43]   *The Brown Schools*, 386 B.R. at 46.

[44]   *In re USA Cafes, L.P. Litig.*, 600 A.2d 43, 48-49 (Del. Ch. 1991); *see also Wallace v. Wood*, 752 A.2d 1175, 1180-81 (Del. Ch. 1999); *Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Bitcher Partners*, Civ. A. 16630-NC, 2001 WL 1641239, *8 (Del. Ch. Dec. 4, 2001); *In re Primedia Inc. Derivative Litig.*, 910 A.2d 248, 257 (Del. Ch. 2006); *Cargill, Inc. v. JWH Special Circumstance LLC*, 959 A.2d 1096, 1110 (Del. Ch. 2008).

[45]   *USA Cafes*, 600 A.2d at 48.

corporate entity: "[c]an it be imagined that such persons have not breached a duty to the partnership[/LLC] itself? And does it not make perfect sense to say that the gist of the offense is a breach of the equitable duty of loyalty that is placed upon a fiduciary?"[46] It is settled Delaware law that, "[i]f the firm is insolvent, its residual claimants are the creditors and it is for their benefit that the directors must now manage the firm."[47]  Under Delaware law, once a subsidiary becomes insolvent, the fiduciary duties shift from the parent to the insolvent subsidiary's creditors, and "[o]nce they do, the effect is that there is more than one equitable beneficiary of those duties."[48]

**III.**     **The Amended Complaint Adequately States Claims for Breaches of Fiduciary Duties.**

    **A.**     **The Duties of Loyalty & Good Faith**

The duties of loyalty and good faith require directors and officers to put the interests of the company above their own interests and those of others.  The "universe of fiduciary misconduct is not limited to … disloyalty in the classic sense[,]" *i.e.* self-dealing, personal gain, or a cognizable conflict of interest.[49]  A corporate fiduciary fails to act in good faith and therefore breaches the duty of loyalty by "intentionally act[ing] with a purpose other than that of advancing the best interests of the corporation . . . act[ing] with the intent to violate applicable positive law . . . [or] intentionally fail[ing] to act in the face of a known duty to act, demonstrating a conscious disregard for their

---

[46]  *Id.* at 49.

[47]  *Trenwick*, 906 A.2d at 203 n.96.

[48]  *Collins v. Kohlberg & Co. (In re Southwest Supermarkets, LLC)*, 376 B.R. 281, 285 (Bankr. D. Ariz. 2007) (applying Delaware law).

[49]  *See Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.)*, 906 A.2d 27, 66 (Del. 2006); *see also Bridgeport Holdings Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings, Inc.)*, 388 B.R. 548, 564 (Bankr. D. Del. 2008) (citing *Desimone v. Barrows*, 924 A.2 908, 933 (Del. Ch. 2007).

responsibilities."[50]   Corporate fiduciaries fail to act in good faith where they display a lack of diligence that "is more culpable than simple inattention or failure to be informed of all facts material to the decision," such that it is "qualitatively more culpable than gross negligence."[51]

Acts and omissions like those alleged in the Amended Complaint are sufficient to state a claim for breach of the duty of loyalty.[52]   In *RSL Primecall*, the plaintiffs alleged that a parent company forced its insolvent subsidiary to become the guarantor of the parent's pre-existing bond debt thirteen months before the subsidiary filed for bankruptcy.[53]   Like here, the subsidiary was not party to and did not originally guarantee the debt, which was issued years before.   The plaintiff debtors and committee of unsecured creditors filed suit, claiming that the subsidiary's directors breached their fiduciary duties by executing a "Unanimous Written Consent" authorizing the subsidiary to enter into the guaranty, without conducting any independent analysis or evaluation. In their motions to dismiss the complaint, the *Primecall* subsidiary directors argued that they did not breach their fiduciary duties because they did not act out of self-interest or receive a pecuniary gain, their decisions were protected by the business judgment rule, and they were relieved from potential liability by virtue of an exculpation clause in the subsidiary's certificate of incorporation.[54]   The court disagreed on all counts, holding that:

---

[50]   *Brehm v. Eisner*, 906 A.2d at 67.

[51]   *Id.* at 66.

[52]   *See, e.g., The Official Comm. of Unsecured Creditors of RSL Com Primecall, Inc., et al. v. Beckoff (In re RSL Com Primecall, Inc., et al.)*, Nos. 01-11457 (ALG) through 01-11469 (ALG), Adv. 03-2176 (ALG), 2003 WL 22989669, at *12 (Bankr. S.D.N.Y. 2003 Dec. 11, 2003) ("With respect to the guarantees, Plaintiffs have challenged the Defendants' good faith and this is enough, at this stage, to overcome the exculpation clause.").

[53]   *Id.* at *2.

[54]   *Id.* at *11.

18

> [the law does] not require that the plaintiffs allege that each defendant director was the recipient of a direct pecuniary benefit from a challenged transaction, but [instead it is sufficient that] in each the transaction allegedly benefited only the affiliate/[parent company] and was patently inequitable to the subsidiary …
>
> Moreover, the business judgment rule does not protect conduct of directors where material decisions are made in the absence of any information and any deliberation. Allegations that the [subsidiary] directors abdicated all responsibility to consider action that was arguably of material importance to the corporation puts directly in question whether the board's decision-making processes were employed in a good faith effort to advance corporate interests . . .
>
> With respect to the guarantees, Plaintiffs have challenged the Defendants' good faith and this is enough, at this stage, to overcome the exculpation clause.[55]

Moreover, the *Primecall* court noted:

> It would be absurd to hold that the doctrine that directors owe special duties after insolvency is inapplicable when the insolvent company is a subsidiary of another corporation. That is precisely when a director must be most acutely sensitive to the needs of a corporation's separate community of interests, including both the parent shareholder and the corporation's creditors. The Delaware courts have recognized that directors who hold dual directorships in the parent-subsidiary context may owe fiduciary duties to each corporation.[56]

There is no basis in law for the proposition that the directors of an insolvent subsidiary can permit it to be plundered for its parent's benefit.[57]

The Committee has alleged sufficient facts to support the claim that the defendants breached their duty of loyalty and acted in bad faith. The Committee has alleged, in what I find to be ample

---

[55] *Id.* at *11-12.

[56] *Id.* at *13.

[57] *Id.*

19

detail for pleading purposes, that the defendants were required to evaluate the July 2007 transaction on behalf of the entities they served, and that each of them failed to do so.[58]   The defendants' arguments regarding lack of factual specificity are frivolous.

### B.      The Duty of Due Care

The duty of due care requires that corporate directors "use that amount of care which ordinarily careful and prudent men would use in similar circumstances" and "consider all material information reasonably available."[59] The Delaware Supreme Court has described two contexts in which liability for a breach of the duty of care may arise:

> First, such liability may be said to follow from a board decision that results in a loss because that decision was ill advised or 'negligent.' Second, liability to the corporation for a loss may be said to arise from an unconsidered failure of the board to act in circumstances in which due attention would, arguably, have prevented the loss.[60]

Where "directors have made an unintelligent or unadvised judgment, the protections of the business judgment rule do not apply."[61]   Gross negligence is the applicable legal standard for a corporate director's breach of the duty of care under Delaware law,[62] and this appears to be synonymous with

---

[58]   *See* Am. Compl., ECF No. 93, at ¶¶ 6, 95-98, 107, 110-12, 117, 120-127, 134-36, 139-54, 162

[59]   *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005).

[60]   *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

[61]   *Walt Disney*, 907 A.2d at 748 (Del. Ch. 2005); *see also Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 367 (Del. 1993); *Bridgeport Holdings Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings, Inc.)*, 388 B.R. 548, 572 (Bankr. D. Del. 2008).

[62]   *Brehm v. Eisner*, 746 A.2d 244, 259 (Del. 2000).

20

"engaging in an irrational decision making process."[63]  It "signifies more than ordinary inadvertence

or inattention,"[64] and a corporate strategy will fail to meet the standard of due care if it reflects "a

knowing and deliberate indifference to the potential risk of harm to the Company."[65]  As Judge Teel

stated in *Greater Southeast Cmty. Hosp. Corp.* (when declining to apply the business judgment rule

at the motion to dismiss stage):

> Any reasonable businessperson worth her salt would have carefully
> considered the obvious negative consequences of incurring additional
> debt of the magnitude acquired by each and every one of the debtors,
> yet this is precisely what [the officer defendants] allegedly failed to
> do when they signed the agreements and notes--some of which
> required the issuance of patently false 'solvency certificates'--that
> plunged the debtors deeper and deeper into insolvency … Such
> conduct, if it actually occurred, cannot be excused as 'ordinary
> inadvertence or inattention,' but rather constitutes gross negligence
> of the highest order. [Plaintiff] alleges facts sufficient to state a claim
> for breach of the fiduciary duty of care by [the officer defendants].[66]

And under Delaware law, "[t]he more significant the subject matter of the decision, the greater is

the requirement to probe and consider alternatives."[67]  In *Healthco*, the court considered allegations

of uninformed decision-making by directors in connection with a leveraged buyout that left the

corporation with unreasonably small capital.  In approving the LBO, the directors failed to review

---

[63]  *In re Greater Southeast Cmty. Hosp. Corp.*, 353 B.R. 324, 339 (Bankr. D. Col. 2006) (citing *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 241 (3d Cir. 2005)).

[64]  *Jardel Co. v. Hughes*, 523 A.2d 518, 530 (Del. 1987).

[65]  *See Boles v. Filipowski (In re Enivid, Inc.)*, 345 B.R. 426, 451 (Bankr. D. Mass. 2006) (applying Delaware law).

[66]  *Greater Southeast Cmty. Hosp. Corp.*, 353 B.R. at 342.

[67]  *Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)*, 208 B.R. 288, 305 (Bankr. D. Mass. 1997) (applying Delaware law); *see also UIS, Inc. v. Walbro Corp.*, No. Civ. A. 9323, 1987 WL 18108, *2 (Del. Ch. Oct. 6, 1987) ("A board's duty is to act with due care and that duty includes the responsibility to reasonably inform oneself of alternatives.").

cash projections indicating that the debtor would be left with insufficient capital after the transaction. The court held that the directors' failure to consider material information was grossly negligent and violated their duty of due care. It is difficult to imagine a business decision more significant for the conveying subsidiary debtors than becoming obligors of the July 2007 transaction's $500 million of new debt, which provided them with no benefits and ultimately led to their bankruptcy.

The Committee has alleged sufficient facts to support the claim that the defendants breached their duty of due care. The Committee has alleged that the defendants were required to evaluate the July 2007 transaction on behalf of the entities they served, and that each of them failed to do so.[68] The defendants' arguments regarding lack of factual specificity are, again, frivolous.

## IV.    The Amended Complaint Adequately States Claims for Aiding and Abetting Breaches of Fiduciary Duties.

The Committee is required to show: (1) the existence of a fiduciary relationship; (2) that the fiduciary breached its duty; (3) that a non-fiduciary defendant knowingly participated in the breach; and (4) that damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary. As stated in the preceding sections, the Amended Complaint alleges the existence of fiduciary relationships and breaches of duties concomitant with those relationships.

To allege a non-fiduciary's knowing participation in a fiduciary's breach, a plaintiff must allege facts from which the non-fiduciary's knowing participation can be reasonably inferred.[69] "[I]n some circumstances, the nonfiduciary's actions may be so suspect as to permit, if proven, an

---

[68]    *See* Am. Compl., ECF No. 93, at ¶¶ 6, 95-98, 107, 110-12, 117, 120-127, 134-36, 139-54, 162

[69]    *See Miller v. Greenwich Capital Fin. Prods., Inc. (In re American Bus. Fin. Servs., Inc.)*, 362 B.R. 135, 145 (Bankr. D. Del. 2007); *In re Shoe-Town, Inc. Stockholders Litig.*, C.A. No. 9483, 1990 WL 13475 at *8 (Del. Ch. Feb. 12, 1990).

inference of knowledge of an intended breach of trust."[70]  Nevertheless, a plaintiff is not required to establish that the non-fiduciary intended to aid in the fiduciary's breach because "knowing participation" only requires "that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach."[71]  A reasonable inference of the non-fiduciary's "knowing participation" may be drawn where the complaint alleges that the third party was aware of the fiduciary's wrongful actions and advocated, approved of, or participated in some manner in them.[72]

The defendants' arguments that the Amended Complaint fails to allege aiding and abetting breaches of duty are questionable, at best.  The Amended Complaint makes a number of fairly specific allegations which, taken together, can only be interpreted as a comprehensive allegation of aiding and abetting breaches of fiduciary duty.[73]  The Committee alleges that the defendants used insolvent subsidiary debtors' assets to expand the parents' pie at the expense of the subsidiaries' non-parent stakeholders.  This is not a matter where the subsidiary debtors received the proceeds of the loan, thereby increasing liabilities and assets in the same (or equivalent) amounts.  The allegation is that the conveying subsidiary debtors received little or nothing in return for the liens on their assets, and that the cash proceeds of the July 2007 transaction went to satisfy the obligations of others.

---

[70]  *Triton Constr. Co. v. Eastern Shore Elec. Servs., Inc.*, C.A. No. 3290-VCP, 2009 WL 1387115, *16 (Del. Ch. May 18, 2009), *aff'd* 988 A.2d 938 (Del. Jan. 14, 2009).

[71]  *See Malpiede v. Thompson*, 780 A.2d 1075, 1097 (Del. 2000).

[72]  *See Triton Constr. Co.,* 2009 WL 1387115, at *16; *see also IT Litig. Trust v. D'Aniello (In re IT Group, Inc.)*, No. 02-10118, Civ. A. 04-1268-KAJ, 2005 WL 3050611, *13 (D. Del. Nov. 15, 2005) ("allegations of [the defendants'] actual control of the [company's] board are sufficient to survive the 12(b)(6) motion, and knowing participation could be inferred from that alleged control.").

[73]  See Am. Compl., ECF No. 93, at ¶¶ 92, 94-97, 108-11, 113-16, 129-31, 134, 145, 153-54, 157-58.

## V.  Conclusion

Under Delaware law, business judgment will not be second-guessed by courts absent an abuse of discretion because there is a presumption of propriety, and the burden is on the party challenging the business decision to establish facts rebutting the presumption.[74] But the business judgment rule does not protect the defendants at this early pleading stage because the Committee has properly alleged breaches of the duties of loyalty, good faith, and due care.  A director who breached any one of those duties loses the protection of the business judgment rule under Delaware law.[75]

Further, the defendants' arguments that this breach of fiduciary duty action is merely a disguised deepening insolvency claim are unpersuasive.  This is not a matter in which the defendants "cho[se] to continue the firm's operations in the hope that they [could] expand the inadequate pie."[76] The Committee alleges that the defendants used insolvent subsidiary debtors' assets to expand the parents' pie at the expense of the subsidiaries' non-parent stakeholders.  This is not a matter where the subsidiary debtors received the proceeds of the loan, thereby increasing liabilities and assets in the same (or equivalent) amounts.  The allegation is that the conveying subsidiary debtors received little or nothing in return for the liens on their assets, and that the cash proceeds of the July 2007 transaction went to satisfy the obligations of others.  The allegations here therefore differ from those in *Mukamal v. Bakes*, where it was "not even alleged that the Debtors suffered any loss on the loan transactions in question," nor alleged "that the interests of the [controlling shareholder] were favored

---

[74]  *In re Troll Commc'ns*, 385 B.R. 110, 118 (Bankr. D. Del. 2008).

[75]  *McMullin v. Beran*, 765 A.2d 910, 917 (Del. 2000) (citing *Emerald Partners v. Berlin*, 726 A.2d 1215, 1221 (Del. 1999)).

[76]  *Trenwick*, 906 A.2d at 174.

over those of other shareholders, or that [the defendant's] decision-making failed to increase the value of [the company] for all shareholders."[77]

Finally, I need not reach the defendants' argument that this action seeks relief which is mooted by the October 30, 2009 order in 08-1435-JKO. "It is premature to reach issues of damages on [a 12(b)(6)] motion," even if the defendants "contend that the facts alleged in the complaint, together with facts of record in the … Chapter 11 case, demonstrate that there could be no damages because the [debtor subsidiary] attempted to set aside the [fraudulent transfers]."[78] The finding that a fraudulent transfer was conveyed does not negate a cause of action that directors breached their fiduciary duties in connection with approving that same fraudulent transfer.[79] And it is worth noting that the Amended Complaint requests punitive damages in the first paragraph of its prayer for relief. A fact-intensive inquiry would in any event be necessary to determine whether the unwinding of the July 2007 transaction renders damages nominal.

It is accordingly ORDERED that the motions to dismiss filed at **ECF Nos. 107, 109, 110, 111, 113, 114, and 129** seeking to dismiss the Amended Complaint at ECF No. 93 are **DENIED.**

### 

Copies to:    *Counsel for Plaintiff, who shall serve copies*
              *and file a certificate of service within 14 days.*

---

[77]  *Mukamal v. Bakes*, 383 B.R. 798, 825 (citing *Trenwick*, 906 A.2d at 204).

[78]  *The Official Comm. of Unsecured Creditors v. Beckoff (In re RSL Com Primecall)*, Nos. 01-11457 (ALG) through 01-11469 (ALG), Adv. 03-2176 (ALG), 2003 WL 22989669, at *12 (Bankr. S.D.N.Y. 2003 Dec. 11, 2003) (breach of fiduciary duty case, relating to underlying fraudulent transfer, survived motion to dismiss).

[79]  *See, e.g., ASARCO LLC v. Americas Mining Corp.*, 404 B.R. 150, 168 (S.D. Tex. 2009) (simultaneously holding that fraudulent transfer occurred and finding defendants liable for aiding and abetting breaches of fiduciary duty in connection with the transfer because "[t]his [fraudulent] conduct is precisely what the law governing fiduciary duties is meant to deter").

25